HIGHTOWER, *et al v.* NUBER.

FRAUDULENT DEED.—Bad faith and unconscionable acts can have no allowance or favor in a court of equity, and in a bill charging the execution and procurement of a deed under such circumstances---the strength of mental capacity of .the parties, the circumstances surrounding them, their relationship etc., make up the grounds upon which the court can find the real influences that produced the conveyance.

*When relieved against, etc.*--If the evidence adduced, or the circumstances surrounding the procurement of the conveyance, show that the party, in whose favor the conveyance is made, possessed an undue advantage over the grantor, and in person, or by agent, exercised an improper influence over such one and to the advantage of the grantee, it is an act against conscience, and within the cognizance of a court of equity and will be relieved against.

*Appeal from Sebastian Circuit Court.*

Hon. E. D. Ham, Circuit Judge.

*Fishback, Clark & Williams,* and *Yonley,* for appellants.

The denial in the answer of appellant threw the burthen of proof upon the appellee; *Greenl. Ev. 332, Sec. 260.* The presumption of law is in favor of soundness of mind; *2d Kent, 562.* Mere mental imbecility is not sufficient, there must be a total loss of the reasoning faculties, to avoid a deed or contract; *2d Kent, 564; Barribean v. Brant, 17 How., 43; 21 Curtis, 354.* Nor will inadequacy of consideration avoid a deed; *Ib.* A voluntary or fraudulent, and even voidable deed, may become good by matter *ex post facto; 4 Kent, 511; Buckle v. Mitchell, 18 Vesey, 110.* Fraud is never presumed, but must be proven; *9 Ark., 482; Hempstead v. Johnson, 18 Ark. 124.*

*Walker & Du Val,* for appellee:

No principle is better established, in courts of equity, than that a conveyance or contract will be set aside whenever it has been obtained through undue influence over a person greatly under the power of another, if there is inadequacy of price, or clear ground of inference that a confidence reposed has been abused, or an advantage has been taken of incompetency, weakness of understanding or clouded or enfeebled faculties. *Harding v. Handy, 11 Wheat U S. S. Ct. R. 104, 125; Taylor v. Taylor, 8 How., 183; Wheeler v. Smith, 3 Cowan, 539, 572; McCraw v. Davis, 2 Iredell Eqt. 618; Slocumb and Wife v. Marshall el al, 2 Wash. C. C. Rep. 397; Kennedy's heirs and executors v. Kennedy's heirs, 2 Ala. 574, 606; Hall v. Perkins 3, Wend 626, 631.* As to relief of grantor in equity, in case of fraudulent deeds, see *Jackson v. King, 4 Cowan, 207, 220; Butler et al v. Haskell, 4 Dessaussure, S. C. R. 652, 684; Warren v. Daniels et al, 1 Woodbury & Minot 92, 103.* The question of undue influence is for the chancellor to decide; *Griffith v. Robins, 3 Madd. 191; Dent v. Bennett, My. & Cr. 273; Harvey v. Mount, 8 Beav 439.*

GREGG, J.

In November, 1869, the appellee commenced his suit, in equity, in the Sebastian circuit court against the appellants, Joseph S. C. Roland and his wife Josephine, to cancel a deed by him made to the defendant, Mary Jane Hightower, under which she claimed title to lot 7, in block 7, in the city of Fort Smith, and to have possession thereof delivered to him; alleging that said Rolands were in actual possession as tenants under the Hightowers, and that the deed, executed to said Mary Jane, was obtained through fraud and deception, and without any consideration. That from long and severe affliction he had become greatly depressed in body and mind, insomuch, that he was incapable of transacting any business, and through undue influence of those who were his confidential advisers, and of his own want of capacity, said deed was procured.

The Rolands made no response to the plaintiff's complaint.

The Hightowers separately answered and admitted that the plaintiff was quite old and had been afflicted for many years, and that he was propped up in a sick bed at the time he executed the deed; that the consideration expressed in the deed in reality never did pass, except temporarily, and the lot and houses thereon were a gift to the said Mary Jane. But they repeatedly and positively denied that the plaintiff's mental faculties were impaired, and they averred that he was fully sane and well; knew all that he was doing at the time he executed the deed; that plaintiff was a foreigner and had no heirs in this government, and that he was greatly attached to the said Mary Jane because of her kind offices to him, and like favors from her mother's family, and for that cause he gave her the property and executed the deed. Issues were made up and both parties took depositions.

Swift, a justice of the peace, testified that at the instance of W. M. Hightower, he went to Nuber's house and took the acknowledgment of the deed. Plaintiff was supposed to be between 50 and 60 years old; had been in feeble health, and

was then propped up in a sick bed; that plaintiff responded, "the deed was all right," and made the usual acknowledgment and said he was old and sick and would die soon and wanted some one to take care of him. Mrs. Hightower presented the deed, Sparks filled up some blanks, and he and her brother, Henry Miller, witnessed the deed. Nothing said as to whether the deed was a gift or sale, but Mrs. Mary J. Hightower handed plaintiff a $500 bill. He did not then appear to be in danger of immediate death, and witness considered his mental condition not then such as to render him incapable of making a deed, and the property conveyed was worth from $3,000 to $4,000.

This witness was asked, if, at the bringing of this suit, he did not tell William Walker, esq., that when he took the acknowledgment of the deed, he thought the plaintiff was in no condition to make a deed; said he made no such statement that he could recollect of. Walker testified, orally, before the court, that he did then make such statement.

Sparks testified that he *happened* to go to Hightower's that evening, and Hightower asked him to go with his wife, as she was going out; they went to plaintiff's, found him set up in bed; could not say if he was supported by some one; that he was about 60 years old and was feeble, and for several years he "had made motions like a man in bad health;" saw nothing to indicate incapacity to make a deed; that he signed, acknowledged and delivered the deed, and received from Mrs. Hightower a $500 bill; that the plaintiff and the Miller family (of which Mrs. Hightower had been a member) were very intimate, and he had heard plaintiff say, Mary Jane, (alluding to Mrs. Hightower,) was to have what he had, or something to that effect, but never heard him speak of the deed after it was made.

Henry Miller testified that he was the brother of Mrs. Hightower; that he attested the deed; that plaintiff gave the numbers and signed and acknowledged the deed; that plaintiff, at the time, was perfectly rational; that he told Mary Jane where to get the original deed, which she yet has, and he re-

ceived from her a $500 bill; that in a few days he rented the premises from Hightowers and boarded and provided for Nuber, while there, etc.

Humphreys testified that W. H. Hightower employed him to prepare the deed in question; that Hightower, as the agent of Nuber, had employed him, as an attorney, to appear for Nuber in a suit of slander against him, and that he advised Hightower that the lot should be transferred to an innocent purchaser for a valuable consideration, to avoid a judgment, if any should be recovered against Nuber; and he also prepared a lease of the premises from Hightowers to Roland.

Gerrard testified that in July or August, of 1869, plaintiff told him he had sold his house for $500 to Hightower; afterwards they had some words, and heard plaintiff tell W. H. Hightower he would have his house back.

Clifford testified that, within six months, plaintiff told him he had conveyed his lot to Mrs. Hightower, and that he was sick and out of his head when he did so.

Mrs. Roland and Vail testified that when they made application to rent, in 1869, the plaintiff told them Hightower had control of that matter, and they would have to rent from him.

Harrison testified that he waited on Nuber, and he was very sick, or pretended to be so, when the deed was made, and he said "Mary Jane, I always intended this for you," but he did not know what he did with the deed when signed.

Doctor Spring testified that in October, 1868, plaintiff was very feeble and confined to his bed; he did not recollect of any evidences of unsound mind at that time; he was very peevish and fretful, and on several occasions threatened to go and throw himself into the river to get out of the way; that he supposed him to be 65 years old, and at times he was very nervous.

Doctor Dunlap testified that for three years he had occasionally attended the plaintiff; that he had a number of severe attacks and was liable to die at any time; the effect of the attacks was great physical prostration, and he manifested the

usual peevishness; not palsied or extremely nervous, but his nervous condition corresponded with his general physical prostration; the mind would not be strong and vigorous as one in health; it would, in some degree, partake of his physical prostration, differing in different persons, etc.

McDonald testified that he was in the room, at plaintiff's, when Swift came to take the acknowledgment of the deed; that plaintiff was in a critical condition, likely to die, and witness was emphatically of the opinion that plaintiff was not then in a condition to transact important business of any description. A few days after he asked plaintiff if he was satisfied with the transaction, and he replied he did not know, and supposing plaintiff did not wish to talk of the matter, the subject was at once stopped; some time after this plaintiff told witness he had heard Hightower claimed to have bought his house and lot for $500, and to take care of him, and "he was a good take care to let him set and freeze, and he did not intend such conveyance should stand," and asked witness to employ Bill Walker and Ben Duval for him, which witness did.

Nuber, himself, testified that he was 66 years old and that he had no recollection of ever before seeing that deed; that he never received one dollar for the place; that no $500 bill was ever paid him, etc.; in substance, same as stated in his complaint.

Mary Jane Hightower testified to all the material allegations in her answer; that she did not know the $500 was to be given back until she and plaintiff were left alone in the room, when he handed it back and told her he made her a present of that, etc.

It is alleged in the bill of complaint that William H. Hightower was a brother mason, and a confidential friend, and that he had done kindness to plaintiff, and that he had agreed to act as the agent of plaintiff, and to rent his house and collect rents for him upon his receiving written authority so to do, etc.

And the defendant William H. Hightower, in his answer says, "it is true, as stated by the plaintiff, that at the time

39

stated in the petition, he was a brother mason and a confidential friend and adviser of said plaintiff; and that it is also true that he frequently accompanied by his wife, and more frequently when not accompanied by her, for many years visited the plaintiff and extended to him every office of kindness and sympathy in his power, but he denies any speculations as to who should be the object of his bounty." He denies that he agreed to support the plaintiff during his life-time, but says that it was agreed that part of the rents were to be set apart to his support.

Several witnesses in addition to the above were examined and it may be sufficient to say, that it satisfactorily appears that the plaintiff has resided in Fort Smith near 30 years, and a large portion of that time his health has been bad; that he is a foreigner without any relatives in this government; that he is a bachelor 65 or 66 years old; that he is subject to many severe attacks of sickness, very feeble, nervous and peevish; that the house and lot in question is worth near $4000 00, and was all the property he owned; that at the time the deed was made he was in a critical condition, very sick and weak, and liable to die at any time; that defendants, Hightowers, were then among his most intimate friends, associates and confidential advisers.

But whether or not at that time his mental faculties were so impaired as to deprive him of that sound discretion necessary to protect his own interests, or render him incompetent to bind himself by deed, is not alike understood by the witnesses.

The counsel on both sides, in the court below, seemed fully impressed with the importance of developing the mental capacity, or incapacity of the complainant at the date of executing the deed, but the counsel for the plaintiff, in this court, more frequently allude to his mental imbecility as a circumstance to evidence fraud and imposition upon him, than as a disqualification on his part to execute such transfer had he been properly advised and fully protected in what he did.

And in a court of equity, where bad faith and unconsciona-

ble acts can have no allowance or favor, the strength of mental capacity of the parties, the circumstances surrounding them, their relationship, etc., make up the grounds upon which the court can find the real influences that produced the conveyance. And when it is discovered that the party, in whose favor the conveyance is made, possessed an undue advantage over the grantor, and in person, or by agent, exercised an improper influence over such one, and to the advantage of the grantee, it is an act against conscience and within the cognizance of a court of equity.

Without enumerating all the facts in this case, and referring to the great number of authorities in support of the position assumed, suffice it to say, that this grantor was in his dotage, with body and mind greatly enfeebled by long and severe sickness; he was without relatives who, by nature, would have been bound to kindly overlook his declining years. It would have been but unnatural for him to have lingered and died in his solitude without some confidential friend with whom he could communicate, and upon whom he could call for advice, and the defendants were the choice of this grantor, and any of their kind offices had a right to his gratitude, and the respect of all good people; but as above intimated, if such acts were done in the interests of the performers, and to gain an advantage over the recipient, they become vicious and inequitable.

Just before the making of the deed, the defendants made visits, furnished many comforts and luxuries, and in addition, it seems, intoxicating drinks. William Hightower was chosen agent and confidential adviser; was depended upon to employ his counsel and guard his business interests; and at a time when the plaintiff was, at least, in a critical state of health, when, as the physician testified, he was liable to die at any time, when so feeble that he had to be raised and propped in his bed, and his mind so weak as to cause witnesses much to differ whether or not he knew the act he was doing—a deed was produced by the grantee, and he was caused to sign and acknowledge it.

This might be claimed as well, if the conveyance had been reasonable to the grantee and just to the grantor, but the case shows a palpable want in this; the house and lot in question was his only earthly possessions; divest him of this and he became a pauper; he had not the physical ability to call from door to door and ask a beggar's support—would any man of discretion and sane mind have thus reduced himself to entire dependence, and that not in the country of his birth, or within the knowledge of his kindred ? It is true it was attempted to be proved that the defendants, Hightowers, were supporting him, but, upon oath, they both declare they were under no obligations to do so. And when we examine the deed we find no provision whatever for his maintenance, and it would be unreasonable to think or hold that this old man, whose frugal life had secured him about $4000,00 worth of property, in this, his day of greatest need, would, without consideration of kinship or value, convey to another every dollar he was worth.

We might refer, in detail, to the particular situation and mental condition of the plaintiff, the peculiar circumstances under which such marked attention was given him by the defendants, the intimations of a want of that full attention after the deed was executed, the delivery of $500,00 in the presence of the witnesses as a pretended consideration, when none in fact was given, the admission of the defendants that they were attempting to practice a legal fraud, etc., but it is unnecessary. The whole substance of this transaction shows a want of capacity or undue influence, and a court of equity cannot sustain it, and out of many authorities we refer to *Kennedy's heirs, et*: *al. v. Kennedys et al. 2 Ala., 574; Hall v. Perkins, 3 Wend, 626; Whelan v. Whelan, 3 Cowen, 539; Taylor v. Taylor, 8 How. U. S., 183; Whelan v. Smith et al. 9 ib. 55; Harding v. Harding, 11 Wheat, 106; Jackson et al. v. King, 4 Cowen, 207.*

The court below found one hundred and eighty dollars against the appellants jointly for so much rents and profits by them received for the use of the house and lot, from the date of the deed up to the date of the decree ; but the counsel for the

appellee, in this court, waive all claim for rents and profits, and consent that so much of the decree of the court below as relates thereto may be reversed, we therefore express no opinion as to whether that portion of the decree of the court below was correct or not, but will modify the same as agreed by counsel, and with that modification the decree of the court below is affirmed.