### NABERDING *v.* KARRAZ.

### Opinion delivered April 25, 1927.

1. CONTRACTS—UNDUE INFLUENCE—EQUITY.—A conveyance or contract will be set aside whenever it has been obtained through influence over persons greatly in the power of another if there is no consideration or inadequacy of consideration, or a clear ground of inference that confidence has been abused or an advantage has been taken of weakness of understanding, or clouded or enfeebled faculties.

2. BILLS AND NOTES—VALIDITY.—Where an old woman, eighty-two years old, unlettered and unlearned, of weak intellect, was induced to give defendant notes and certificates of deposit without consideration, defendant acquired no title, and plaintiff was entitled to the money collected by defendant and for possession of notes.

3. BILLS AND NOTES—INNOCENT HOLDER.—In action to recover possession of notes, evidence *held* to show that the holder of the notes who purchased them from one who had got them from the plaintiff without consideration, and who owed the holder a debt, was not an innocent holder.

Appeal from Monroe Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

*C. F. Greenlee,* for appellant.

*Bogle & Sharp* and *C. W. Norton,* for appellee.

McHANEY, J. Appellant is an old woman, eighty-two years old, unlettered and unlearned, of weak intellect. George Naberding, her son, was killed in France. The United States Government paid to the appellant, his mother, a sum of money on account of the insurance, and has, since that time, been paying her monthly the sum of $48.75 on account of the death of her son. Some of her money she deposited in the Bank of Brinkley, for which time certificates of deposit were issued to her. On December 20, 1922, she loaned $800 of her money to H. Henard at 8 per cent. from date until paid, evidenced by four promissory notes of $200 each, one due December 21, 1923, and one on the 21st day of December for the years 1924, 1925 and 1926. The interest on all notes was payable annually, and, if not paid when due, was to become a part of the principal and bear interest thereafter at 8 per cent. These notes were secured by a chattel mortgage on certain personal property of H. Henard. On December 23, 1922, at the instance of Karraz and Mahfouz, appellant indorsed and surrendered a certificate of deposit to the Bank of Brinkley for $467.12, which was cashed by the bank and deposited to the credit of the Fargo Cash Store in the name of Karraz. The indorsement on the back of the certificate by appellant was made by Mahfouz by her mark. This certificate had interest due on it in the sum of $18 or $19, which was also collected by Karraz. About the same time, or later, she turned over all of the above-mentioned notes to Karraz, which she indorsed by Mahfouz writing her name on the back, she touching the pencil, and he witnessing the indorsement, as he did in the case of certificate of deposit. Karraz tried to get his attorneys to indorse the notes for the old lady, and they declined to do so, but again his friend, Mahfouz, performed the service for him.

When the first note became due, Karraz had Mahfouz collect it and the interest on all the notes, amounting to

$264 in all, which Mahfouz brought back to him.   He says that he tried to sell all the notes to Henard for $350; that, later, he sold them to his friend, Namey, for $400, $200 of which was a debt he owed Namey, and $200 was paid to him in cash, and that he sold them to Namey before the suit was brought.   He testified that the old lady gave the notes to him because she didn't want them —that she would rather he had them than the members of her family; that, if she had wanted the notes back, he would have given them to her, or, if she wanted the money, he could get the money and pay her; that, if she needs any money and will come to him, he will help her— that is, that he would do the best he could to help her. He admitted that he had no money, had spent all that he had got from her, but that, if she needed money, so long as he was in good health, he could make it and help her.

Mrs. Naberding testified that she did not give him the notes to be kept by him, but that he was to put them in the bank for her, and stated positively that they were not his property.   Appellant is corroborated in her testimony by her daughter, Susie Cash, who stated that her mother gave Karraz the notes to be put in the bank, as also two bank notes, evidently meaning two certificates of deposit.

Namey testified that he purchased the notes for the consideration stated by Karraz.   He was asked this question:

"Q.   You do not know, of your own knowledge, in what capacity Karraz was to collect these notes?   A.   I asked him where he got that note, and he said 'She gave it to me,' and I asked him, 'How I know she gave it to him,' and he says, 'P. A. Mahfouz was there and signed it,' also she gave him some money.   That is all I know."

Karraz, Mahfouz and Namey are Syrians, and are all intimate friends and acquaintances.

This action was brought to recover against Mahfouz and Karraz for the total amount of money converted by them, and against Namey to recover possession of the notes.   After hearing the evidence, the chancellor dis-

missed the complaint for want of equity, from which comes this appeal.

The record in this case shows that the appellant was a very old woman; that she was weak in mind; that there was no consideration; that, while there is little evidence of persuasion, it is shown by the testimony of H. H. Britton, husband of appellant's granddaughter, and her next friend in this action, that there was persuasion. He testified, in substance, as follows: I know the reason why grandmother transferred the notes to Isaac Karraz. He petted her up just like she was a child. He gave her a few little candies, called her sweetheart, and that just made a fool of her. Again he testified that Karraz tried to persuade his grandmother away from his home; that Karraz came to witness' house during the month of February, 1924, and said to her, "Sweetheart, what's the matter? Ain't you going back home with me?" She replied that she. was sick.

Under such circumstances, a court of equity will inquire very closely into the transaction, and will cancel the transfer or conveyance on slight evidence of bad faith and unconscionable acts resulting in the conveyance or transfer of property. No principle is better established, in courts of equity, than that a conveyance or contract will be set aside whenever it has been obtained through undue influence over a person greatly in the power of another, if there is no consideration, or inadequacy of consideration, or clear ground of inference that a confidence reposed has been abused, or an advantage has been taken of incompetency, weakness of understanding or clouded or enfeebled faculties.

"If there is reason to believe that influence has been acquired over a person of weak mind, the transaction will be carefully scrutinized in equity. And whenever, as a result of age, sickness, or other cause, there is a great weakness of mind, not amounting to total incapacity, in a person executing a conveyance, and it appears that there was either no consideration therefor or a grossly inadequate one, the conveyance may be set aside by a

court of equity upon a proper and seasonable application made either by the injured party or his representatives or heirs.'' 13 Cyc. 586.

One of the leading cases in our own court on this subject is that of *Hightower* v. *Nuber,* 26 Ark. 604, written by Mr. Justice GREGG, in which the court said: ''And in a court of equity, where bad faith and unconscionable acts can have no allowance or favor, the strength of mental capacity of the parties, the circumstances surrounding them, their relationship, etc., make up the grounds upon which the court can find the real influences that produced the conveyance. And when it is discovered that the party in whose favor the conveyance is made possessed an undue advantage over the grantor, and, in person or by agent, exercised an improper influence over such one, and to the advantage of the grantee, it is an act against conscience and within the cognizance of a court of equity.''

We do not believe, from the record in this case, that Mrs. Naberding intended to deliver the notes to Karraz as a gift, but, even though it may be said she did so intend the transfer, yet, under the circumstances of this particular case, it would be unconscionable and inequitable to permit the conveyance to stand. Mr. Henard states that he refused to borrow the money from her until he had consulted with her daughter, Mrs. Cash. He says that she was old, childish, feeble-minded, and there is no contention at all that there was any consideration whatsoever for either the money or the notes.

We are therefore of the opinion that the chancellor erred in dismissing the complaint for want of equity, and that Karraz acquired no title either to the money or the notes.

The next question to be considered is whether Namey is an innocent purchaser of said notes. We have carefully considered the evidence as to whether Namey was an innocent purchaser, and have reached the conclusion that he was not. He testified himself that Karraz told him the old lady had given him the notes, and, as evi-

dence of the fact, he showed him where Mahfouz had signed the old lady's name to the notes. He therefore knew that Karraz had acquired the notes without any consideration having been paid therefor. Namey was asked this question:

"Q. But you knew the note didn't cost him anything—he told you he just got it from Mrs. Naberding if he would take care of her in the future? A. That is what he told me, that he would take care of that woman— if he didn't, she wouldn't give it to him."

Then there are other circumstances connected with the transfer of these notes that are, to say the least, very suspicious. He testified that Karraz owed him $200, that Karraz had owed him $200 since 1921, which he had loaned Karraz without taking any note or any security therefor. He was living at Forrest City and Karraz at Fargo; that Karraz had no money, and that he had never tried to collect the debt from him. Under these circumstances we are of the opinion that Namey took the notes from Karraz with whatever infirmities attached to them in the hands of Karraz, and that therefore Namey is not an innocent holder of said notes.

With reference to Mahfouz' connection with this case, it may be briefly stated that, whenever there was any collecting to be done, or the signing of the old lady's name to any paper necessary to transfer it, he was present and participating therein.

The decree of the chancery court will therefore be reversed, and the cause remanded with directions to enter a decree against Karraz and Mahfouz for the amount of money collected by them, or either of them, from the appellant, and ordering and directing the appellee, Namey, to surrender and deliver up the notes in his possession, or, if he has parted with the possession thereof, to enter a judgment against him, Karraz and Mahfouz for the amount of said notes, and the interest thereon, and such other orders or decrees as may be necessary to enforce the rights of appellant according to the principles of equity and not inconsistent with this opinion.