**CHRYSLER CORPORATION, Plaintiff,**

v.

**FEDDERS CORPORATION, et al., Defendants.**

Civ. No. 81–661.

United States District Court, D. New Jersey.

Aug. 5, 1981.

Cole, Berman & Belsky by Morrill J. Cole, Rochelle Park, N. J., and Kelley, Drye & Warren by Robert Ehrenbard, William C. Heck, Paul F. Doyle, New York City, for plaintiff.

Wilentz, Goldman & Spitzer by Milton B. Conford, Robert J. Cirafesi, Woodbridge, N. J., and Weisman, Celler, Spett, Modlin & Wertheimer by Lawrence N. Weiss, New York City, for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

On March 4, 1981, a complaint was filed in this Court by the plaintiff, Chrysler Corporation, alleging four counts of fraudulent conspiracy and violations of the Securities Exchange Act of 1934, as amended, against the defendants, Fedders Corporation and five individuals who allegedly dominated that corporation's management group. Shortly thereafter, Chrysler filed a notice of *lis pendens* upon realty owned by Fedders in Edison, New Jersey. The 75-page complaint in this Court alleges a conspiracy to defraud Chrysler through a series of acts beginning shortly before a February 23, 1976 agreement between the two corporations, whereby Fedders agreed to purchase Chrysler's Airtemp Division, and continuing until the present. In addition to seeking

$85 million in compensatory damages, the complaint seeks the imposition of either a constructive trust or an equitable lien upon the Edison real estate, and punitive damages. The case is before me today on the defendants' (hereinafter collectively referred to as Fedders) motion to dismiss, transfer or stay the action. The principal object of the motion is the discharge of the notice of *lis pendens* filed by Chrysler, although it is also clear that Fedders would prefer not to have to defend this lawsuit in addition to those it is already involved in with Chrysler elsewhere.

The parties before me have been at loggerheads over the Airtemp conveyance since shortly after it took place. A great deal of litigation has resulted in both this country and abroad. Fedders, which claims that Chrysler owes it more than $63 million in damages as a result of a variety of contract breaches and other misdeeds, has generally refused to make any of the payments that Chrysler claims are still owed under the February 23, 1976 agreement. This lawsuit, apparently the seventh initiated by Chrysler, is the latest round in Chrysler's attempt to receive the consideration that it claims to be owed and/or compensation for the damages it has suffered as a result of Fedders' alleged misdeeds. All of these lawsuits are presently pending, although an order granting partial summary judgment to Chrysler on one of its claims in one of these lawsuits has been affirmed by New York State's highest court, the Court of Appeals.

Chrysler states that it chose to prosecute what it considers to be the new claims presented in the lawsuit before me as a new lawsuit in New Jersey rather than as an addition to one of its pending lawsuits because of its belief that only a court sitting in New Jersey has the power to order the imposition of a constructive trust, or an equitable lien on land in New Jersey. It considers the availability of this remedy, and the related filing of the notice of *lis pendens*, to be extremely important to secure its interests because of its belief that

Fedders is a failing corporation that may not be able to satisfy a money judgment. For its part, Fedders believes that Chrysler has filed the suit and notice of *lis pendens* in order to increase Chrysler's power in settlement negotiations at a time when Fedders has publicly announced plans to sell some of the lands affected by the notice of *lis pendens*.

Fedders' motion seeks to discharge the *lis pendens* through success on any one of four theories:

One, it argues that this lawsuit should be dismissed due to the *res judicata* effects of the partial summary judgment achieved by Chrysler in one of its two New York State court actions and affirmed by that State's highest court.

Two, it argues that this lawsuit should be dismissed because the restitution and rescission claims allegedly presented here by Chrysler are inconsistent with the affirmation of the contract manifested by Chrysler's other lawsuits.

Three, it argues that this lawsuit should be dismissed, stayed, or transferred in venue to the Southern District of New York, due to a pending lawsuit in that district between Chrysler and Fedders.

Four, it argues that New Jersey's *lis pendens* statute, N.J.S.A. 2A:15–6 *et seq.*, is unconstitutional on due process grounds.

Because the focus of the present motion is whether the notice of *lis pendens* affecting the Edison property should be discharged, I will decide that issue first.

Well-established principles of jurisprudence require me to avoid the consideration of constitutional questions unless absolutely necessary. *E. g., Halderman v. Pennhurst School*, 612 F.2d 84, 94 (3d Cir. 1979) (en banc), *reversed on other grounds*, —— U.S. ——, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). I will, therefore, begin with a consideration of Fedders' other arguments for dissolution of the *lis pendens*.

■ There is no question that the New Jersey *lis pendens* statute is applicable to

claims such as the ones in this case that seek to impress a constructive trust or an equitable lien on property in this state. See *Polk v. Schwartz*, 166 N.J.Super. 292, 298, 399 A.2d 1001 (App.Div.1979). Under the terms of the statute, the *lis pendens* may only be discharged by: One, a final judgment in favor of the defendant-owner of the property, N.J.S.A. 2A:15–14; two, a complete and final satisfaction of the claim against the defendant-owner, N.J.S.A. 2A:15–17; three, the posting of a sufficient bond, approved by the court, in lieu of the *lis pendens*, N.J.S.A. 2A:15–15; four, the plaintiff-claimants' failure to diligently prosecute the action, N.J.S.A. 2A:15–10; or five, the passage of three years after the date of the filing, N.J.S.A. 2A:15–11.

Aside from its constitutional challenge, Fedders argues that either a dismissal, a stay, or a change of venue should discharge the *lis pendens*. I agree with Fedders that a dismissal of this lawsuit would discharge the *lis pendens*. N.J.S.A. 2A:15–14. I disagree, however, with its contentions that a stay or a change of venue would provide it with similar relief. Neither a stay nor a change in venue would constitute a judgment in the defendants' favor because the lawsuit would not be over. Nor would either action support a discharge due to plaintiff's failure to prosecute diligently, since the delay would be attributable to the court rather than to the plaintiff. N.J.S.A. 2A:15–10. Finally, although a change in venue would remove the lawsuit beyond New Jersey's borders, it would not in and of itself discharge the *lis pendens*, since the statute only requires that the action be properly instituted in either a state or a federal court in New Jersey having proper civil jurisdiction and not that the action be actually litigated within the borders of the state. N.J.S.A. 2A:15–6.

Since this court has both personal jurisdiction over the parties and subject matter jurisdiction by virtue of the diversity of the parties and the federal claims arising under the Securities Exchange Act of 1934, the suit was properly instituted here. A subsequent change of venue to the Southern District of New York, or any other district, would not provide a discharge.

Accordingly, I will defer consideration of both the question of whether to stay this action and whether to order a change of venue until after I have determined whether the *lis pendens* should be discharged. The remainder of Fedders' arguments, summarized above, will be considered seriatum, beginning with the argument that this case should be dismissed due to *res judicata*.

In *Allen v. McCurry*, 449 U.S. 90, 101, S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court reaffirmed the importance of the related doctrines of *res judicata* and collateral estoppel to the federal courts. The court also restated the principal tenets of those doctrines. According to that opinion:

> The Federal courts have traditionally adhered to the related doctrines of *res judicata* and collateral estoppel. Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed. 195]. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210]. [5. The *Restatement of Judgments* now speaks of *res judicata* as "claim preclusion" and collateral estoppel as "issue preclusion." *Restatement of Judgments (Second)* § 74 (Tent. Draft No. 3, 1976). Some courts and commentators use "*res judicata*" as generally meaning both forms of preclusions . . . .] As this court and other courts have often recognized, *res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Id.* at 153–154 [99 S.Ct. at 973–974].

\* \* \* \* \* \*

The federal courts generally have ... consistently accorded preclusive effect to issues decided by state courts. *E. g., Montana v. United States, supra; Angel v. Bullington*, 330 U.S. 183 [67 S.Ct. 657, 91 L.Ed. 832]. Thus, *res judicata* and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. See *Younger v. Harris*, 401 U.S. 37, 43–45 [91 S.Ct. 746, 750–751, 27 L.Ed.2d 669].

Indeed, though the federal courts may look to the common law or to the policies supporting *res judicata* and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so;

"The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state ...."

28 U.S.C. § 1738 (1976); *Huron Holding Corporation v. Lincoln Mine Operations*, 312 U.S. 183, 193 [61 S.Ct. 513, 517, 85 L.Ed. 725]; *Davis v. Davis*, 305 U.S. 32, 40 [59 S.Ct. 3, 6, 83 L.Ed. 26] ....

*Allen v. McCurry*, 449 U.S. at 94–96, 101 S.Ct. at 414–416 (footnotes 6–8 omitted.)

Fedders argues that the New York Court of Appeals decision affirming a grant of partial summary judgment in favor of Chrysler in one of the two suits between Chrysler and Fedders in the New York State courts should act as a bar to the present lawsuit. In the language of the *Restatement*, they are arguing that claim preclusion should apply to prevent the assertion of new claims in this suit that should have been brought in the earlier New York State lawsuit. In order to address this question, it is necessary first to understand the factual background of the two lawsuits and the resultant relationship between them, and then to apply the law of the State of New York in order to determine whether the suit before me is precluded.

On February 23, 1976, when the two corporations signed an agreement in connection with the Airtemp conveyance, Fedders allegedly agreed to pay Chrysler the aggregate of, one, $18 million in cash; two, one and a half million shares of Fedders preferred stock, series B; three, a note issued by Fedders, subject to adjustment after an audit, for $10,539,965.00; and four, the assumption by Fedders of certain liabilities owed by Chrysler. The complaint in the suit before me generally alleges that Fedders entered into this agreement as part of a fraudulent conspiracy to obtain the assets of the Airtemp Division without proper consideration and to otherwise damage Chrysler.

 The claim upon which Chrysler obtained partial summary judgment in New York related to Fedders' refusal to pay dividends on the Series B preferred stock. The New York courts ruled that Chrysler owned the stock and was owed $3,900,000.00 in dividends plus interest. Fedders attempted to assert a variety of counterclaims and defenses arising from Chrysler's alleged breach of the February 23, 1976 agreement in order to avoid payment of the claim. On appeal, the New York Court of Appeals held, with regard to these defenses and counterclaims, that "Fedders' remedy is one for damages under the contract and not an avoidance of the independent obligation to pay dividends on the Series B shares." See affidavit of Lawrence N. Weiss, filed April 8, 1981, Exhibit 7.

Fedders' argument before me is that the suit brought by Chrysler to recover this interest should have also included the claims brought in the present suit because Chrysler came to own the shares and to be owed the interest as a result of the same series of transactions that are at issue in the present suit. This argument is princi-

pally based upon *Restatement of Judgments (Second)* § 61 (Tent. Draft No. 1, 1973) which states:

§ 61. Dimensions of "Claim" for Purposes of Merger or "Bar General Rule Concerning 'Splitting'".

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar [citations omitted], the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*As quoted in Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172, 175–176 (Ct.App.1978). The parties have extensively briefed the question of what the *Restatement* means by this language. As much as I may respect the authors of the *Restatement*, however, the question before me is not what preclusive effect the *Restatement* recommends giving to the partial summary judgment decision, but what preclusive effect New York law actually gives to that decision. *Allen v. McCurry, supra.* The New York Court of Appeals in *Reilly v. Reid* indicates that its law is generally in accord with the *Restatement.* 407 N.Y.S.2d at 648, 379 N.E.2d at 175. That opinion, however, provides its own analysis in determining whether a claim has been "split":

In properly seeking to deny a litigant two "days in court", courts must be careful not to deprive him of one. Thus, claim preclusion is tempered by recognition that two or more different and distinct claims or causes of action may often arise out of a course of dealing between the same parties, even though it is not, except in refined legal analysis, easy to say that a different gravamen is factually involved. A party's choice to litigate two such claims or causes of action separately does not bar his assertion of the second claim or cause of action.

407 N.Y.S.2d at 648, 379 N.E.2d at 175 (Citations omitted). This language, together with the language used by the New York Court of Appeals in affirming the grant of partial summary judgment to Chrysler, convinces me that New York's law of *res judicata* would not bar Chrysler from bringing the present suit. In affirming the partial summary judgment, the Court of Appeals described the interest claim as an "independent obligation," separate from whatever breaches may have occurred with regard to the underlying Airtemp contract. The interest claim, therefore, had a sufficiently different gravamen from the suit before this Court to permit this suit to continue in accordance with the New York law of *res judicata* and will not be dismissed on that ground. *See also Studley v. Lefrak*, 48 N.Y.2d 954, 425 N.Y.S.2d 65, 66, 401 N.E.2d 187 (Ct.App.1979); *Christman v. Starr*, 74 A.D.2d 981, 426 N.Y.S.2d 329 (App.Div. 3d Dept. 1980). In view of this result, there is no need for me to address Chrysler's other arguments with regard to this issue. I would also like to note that this holding should not be construed as saying that no issue preclusion or collateral estoppel arises from the partial summary judgment decision. It may well be that some significant issues will be precluded by that litigation, but that question is not before me now.

■ Fedders' next argument is that this lawsuit should be dismissed because the restitution and rescission claims allegedly presented here are inconsistent with the affirmation of the contract manifested by Chrysler's other lawsuits, including the one on the preferred stock. Chrysler's principal response to this argument is that it does not seek to avoid or rescind its Airtemp contract with Fedders, but that it simply seeks compensatory damages for Fedders' alleged contract breaches and allied frauds.

In a motion of this sort, seeking dismissal of a complaint before an answer is even filed, the complaint must be construed in the light most favorable to the plaintiff and its allegations must be accepted as true. *See Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). When this is done, it is clear that this lawsuit cannot be dismissed, even if it is assumed that the defendants' view of choice of remedy of law is correct. One example of how the present complaint seeks to affirm rather than rescind the underlying agreement will suffice. At the time of the Airtemp conveyance, part of the consideration allegedly received by Chrysler was a note for over $10 million from Fedders. That note allegedly provides for the payment of principal in 1984 and 1985, but it also contains a mandatory prepayment provision. That provision allegedly requires Fedders to make a prepayment on the principal if it sells any of its operating divisions or subsidiaries for cash in excess of $10 million. Chrysler claims that Fedders sold its Norge division on April 2, 1979, to Magic Chef, Inc., for $13,160,000.00 but that it fraudulently structured the deal so that it would appear as if it had not received over $10 million in cash, when in fact, it had. In this way, Chrysler claims, Fedders fraudulently avoided prepayment of the note. Fedders then allegedly used the money to satisfy various mortgages and liens on its Edison property. Because Chrysler claims that the money should have been paid to Chrysler rather than to satisfy the mortgages and liens, Chrysler seeks the relief of an equitable lien on the Edison property, placing it in the position of those who actually received the funds. This claim is clearly one that is consistent with an affirmance of the contract, since it is entirely premised upon rights allegedly arising under the contract. Chrysler has not, therefore, chosen to pursue inconsistent remedies and the case will not be dismissed on that basis.

Fedders' remaining argument for dismissal of this suit is that it is largely duplicative of litigation already pending in the Federal Court for the Southern District of New York. It argues that considerations of judicial economy and the avoidance of multiple suits brought by the same plaintiff in order to harass a defendant require a dismissal.

The present suit, however, is not entirely duplicative of the action in the Southern District of New York. This is the first lawsuit, for example, to seek a remedy for the Norge conveyance described above. Although the other action can be read as making some allegations of fraud, the action in this Court is the first to allege an all-encompassing fraudulent conspiracy. It is also significant that this is the first lawsuit to name the five individual defendants as parties.

Although Fedders and the individual parties have told this Court that they would consent to any amendment of the pleadings in the Southern District action to add any or all of the new claims presented before me, it would still be unfair to dismiss Chrysler's suit here at a time when its new claims have not yet been added to the other lawsuit. The Southern District action is nearly three years old, and it is possible that the judge there would withhold his consent to a major amendment of the pleadings at this late date. There is, however, a more important reason not to dismiss this suit on this basis.

It is clear that Chrysler chose to bring this suit in New Jersey in order to take advantage of New Jersey's *lis pendens* statute which preserves a litigant's potential rights in land while the litigation is pending. If this suit is dismissed, the notice of *lis pendens* filed by Chrysler will be discharged, N.J.S.A. 2A:15–14, and like Humpty-Dumpty after his fall, all the amendments of pleadings in New York could not serve to replace the *lis pendens* in New Jersey. N.J.S.A. 2A:15–6. This case, therefore, will not be dismissed due to the litigation pending in the Southern District of New York.

Having concluded that this lawsuit should not be dismissed, it is necessary to consider Fedders' contention that the *lis pendens* must be discharged because it deprives Fed-

ders of property without due process of law in violation of the Fourteenth Amendment. In support of this argument, Fedders relies on a series of four decisions of the Supreme Court: *Sniadach v. Family Financial Corporation*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di-Chem., Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). All four of these lawsuits dealt with the constitutionality of various prejudgment seizure statutes and proceedings. In a recent *en banc* decision, the Third Circuit has summarized the essential holding of these cases:

> ... notice and an opportunity to be heard before an attachment are not absolutely necessary. However, the available procedures must afford the debtor adequate protection against erroneous or arbitrary seizures. The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor ....

*Finberg v. Sullivan*, 634 F.2d 50, 58 (3d Cir. 1980) (en banc) *sur motion for vacation of judgment*, 658 F.2d 93 (3d Cir. 1981). Professor Laurence Tribe has stated the proposition even more concisely: "... an adversary hearing [is] necessary either prior to or *immediately following* a prejudgment garnishment." Tribe, *American Constitutional Law*, §§ 10–14, p. 548 (1978). Thus the problem before me can be reduced to two basic questions:

One, does the New Jersey law of *lis pendens* provide for prejudgment seizure of property such that the procedural limitations of the Fourteenth Amendment are applicable?

Two, if so, do the New Jersey procedures relating to *lis pendens* pass constitutional muster?

In order to intelligently address either of these questions, it is necessary to first describe the New Jersey law as it relates to *lis pendens.*

The law of *lis pendens* has survived virtually unchanged since the 17th Century. In Charles Viner's *A General Abridgement of Law and Equity* (Aldershot, England 1742) the 1684 decision of *Preston v. Tubbin* is reported as holding that, "If the suit be proceeded in with Effect, the Interest of all *Persons that come in* Pendente Lite, tho' they are *no Parties to the Suit*, shall be bound and avoided by a Decree in that Cause." *Id.* at 128. The same case is reported as requiring "a close and continued Prosecution." *Id.* Like *Preston v. Tubbin*, the New Jersey statute provides that

> any person claiming title to, interest in, or lien upon real estate described in the notice [of lis pendens] through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge ... and shall be bound by any judgment therein as though he had been made a party thereto and duly served with process therein.

N.J.S.A. 2A:15–7. Also as in *Preston v. Tubbin*, the New Jersey statute requires the plaintiff to "diligently" prosecute his or her claim. N.J.S.A. 2A:15–10.

The principal difference between the modern statute and the common law is the requirement that a notice of *lis pendens* be filed in order for the plaintiff to have a claim prior to that of a bona fide purchaser, mortgagee, or lienor. N.J.S.A. 2A:15–8. At common law, the filing of the lawsuit itself served as constructive notice to the world that any rights obtained from parties to the lawsuit were subject to the results of the lawsuit. As Judge Gruccio stated in *Wendy's of South Jersey v. Blanchard Management Corp.*, 170 N.J.Super. 491, 406 A.2d 1337 (Chancery 1979): "The *lis pendens* statute changed the harsh common law doctrine by requiring that a notice be filed in order for there to be constructive knowledge and a subordination of any purchaser's right to plaintiff's." *Id.* at 496, 406 A.2d 1337; *see also Turner v. Houpt*, 53 N.J.Eq. 526, 556, 33 A. 28 (1895), (Pitney, Vice-Chancellor); reversed on other grounds, *Houpt v. Turner*, 55 N.J.Eq. 593, 39 A. 1114 (1897).

It has long been clear that in New Jersey the doctrine of *lis pendens* involves more than simple notice, but involves substantive rights belonging to the parties, and especially the plaintiff, freezing the status quo so that the court preserves its power to order a meaningful remedy at the close of the lawsuit. *Turner v. Houpt, supra*, at 553–556, 33 A. 28; *see also Wendy's of South Jersey, supra*, 170 N.J.Super. at 496–497, 406 A.2d 1337. According to the Professors Pomeroy (father and son): "... the general rule may be accurately formulated as follows: During the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponent. This brief proposition in reality contains the entire doctrine." Pomeroy, *A Treatise on Equity Jurisprudence*, § 633, Vol. II, p. 1216 (4th Ed. 1918) *citing Turner v. Houpt, supra*. Thus, it is clear that in New Jersey the filing of a notice of *lis pendens* severely restricts the ability of the defendant in an action to convey realty affected by the notice because he or she cannot convey a title free from the plaintiff's claims. *See also General Electric Credit Corp. v. Winnebago of N. J.*, 149 N.J.Super. 81, 373 A.2d 402 (App.Div.1977). Indeed, a commentator has concluded that the filing of a notice of *lis pendens* in New Jersey destroys the ability of a property holder to convey marketable title if the litigation has any possibility of success. Lieberman, *New Jersey Practice, Vol. 13A, (Abstracts and Titles)* § 1752. That conclusion may understate the effect of a *lis pendens* since *Turner v. Houpt, supra*, held that even if a purchaser investigated the claims in the original suit and correctly concluded that they had no chance of success, that purchaser was still bound by subsequent claims added to the suit after the purchase and must, therefore, subordinate his or her claim to that of the plaintiff who lost on the original claims, but won on the claims added by amendment.

■ I am satisfied that the restriction imposed upon the defendant by the filing of a *lis pendens* is a taking of property that can only be accomplished constitutionally if the requirements of due process are met.

Property rights, of course, "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980) *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In New Jersey, but for a *lis pendens*, a property owner like Fedders has the right to convey an interest in realty free from any claim that may have been brought or that may be brought in a lawsuit to any bona fide purchaser, mortgagee or lienor. N.J.S.A. 2A:15–8. After the *lis pendens* is filed, that right disappears, and any purchaser, mortgagee or lienor takes subject to the result of the suit, that is to say that they are subordinated to the claim of the plaintiff. N.J.S.A. 2A:15–7. Something of worth, property, has been taken away from the defendant by virtue of the state action of the county clerk filing the notice of *lis pendens*, and that entitles the defendant to the protection of the Fourteenth Amendment. In this conclusion, I am in accord with the Supreme Court of Connecticut's decision in *Kukanskis v. Griffith*, 180 Conn. 501, 430 A.2d 21 (1980) and apparently with the unpublished decision of the California courts in *Lake Tulloch Corp. v. Dingman*, WEC–27140 (Super.Ct., L.A. County, June 1, 1973) *affirmed without comment on constitutional issues sub nom. Dingman v. Superior Court*, 2 Civil 42127 (Cal.Ct.App., 2d Dist., July 17, 1973). I have not read this latter decision, but it is described in both Note, *Does California's Statutory Lis Pendens Violate Procedural Due Process?* 6 Pacific Law Journal 62 (1975) and Note, *Lis Pendens and Procedural Due Process*, 1 Pepperdine Law Review 433 (1974). Other courts have reached a different conclusion on this question. *Debral Realty, Inc. v. DiChiara*, —— Mass. ——, 420 N.E.2d 343, Sup. Judicial Ct. of Massachusetts, (1981); *George v. Oakhurst Realty, Inc.*, 414 A.2d 471 (Supreme Court of Rhode Island 1980); *Batey v. DiGirolamo*, 418 F.Supp. 695 (Dis-

trict of Hawaii 1976); *Empfield v. Superior Court*, 33 Cal.App.3d 105, 108 Cal.Rptr. 375 (Court of Appeals 2d District, 1973). I respectfully disagree with the conclusion reached by these courts, and argued by Chrysler herein, that *lis pendens* is simply a form of notice and has no significant effect on property. I find that in New Jersey property rights are affected. Insofar as some of these courts seem to have concluded that insignificant property rights are not entitled to constitutional protection, I believe that they are wrong. As Justice Stewart wrote in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972):

> The Fourteenth Amendment speaks of "property" generally. And, under our free-enterprise system, an individual's choices in the marketplace are respected, however unwise they may seem to someone else. It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are "necessary".

*Id.* at 90, 92 S.Ct. at 1999 (footnote omitted); *See also North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975); *Terranova v. Arco Financial Services of Barre, Inc.*, 396 F.Supp. 1402 (D.Vt.1975) (three-judge court) (defendant need not be deprived of physical possession to lose a property right); *Bay State Harness R. & B. Association v. PPG Industries, Inc.*, 365 F.Supp. 1299 (D.Mass.1973) (three-judge court). The importance of the right, however, may affect the question of what process is due, *see Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and it is to that question that I now turn.

In New Jersey, it is not necessary for a plaintiff to do anything other than file a complaint in order to file a notice of *lis pendens*. N.J.S.A. 2A:15–6. All that is required is written notice of the pendency of an action filed with the office of the county clerk or registrar of deeds and mortgages. *Id.* Neither the complaint nor the notice need be in affidavit form. *Id.* Once a notice of *lis pendens* has been filed, it may not be discharged except by, 1) a final judgment in favor of the defendant-owner of the property, N.J.S.A. 2A:15–14; 2) a complete and final satisfaction of the claim against the defendant-owner, N.J.S.A. 2A:15–17; 3) the posting of a sufficient bond, approved by the court, in lieu of the *lis pendens*, N.J.S.A. 2A:15–15; 4) the plaintiff-claimant's failure to diligently prosecute the action, N.J.S.A. 2A:15–10 or 5) the passage of three years after the date of the filing, N.J.S.A. 2A:15–11. There is no such thing as a motion to discharge a *lis pendens* in New Jersey. A defendant can only discharge the *lis pendens* in litigation by convincing a court to adjudicate that the plaintiff has no right to the realty. As a per curiam panel of the New Jersey Superior Court-Appellate Division wrote in *O'Boyle v. Fairway Products, Inc.*, 169 N.J. Super. 165, 404 A.2d 365 (App.Div.1979):

> [W]hen a complaint on its face at least arguably recites a cause of action coming within N.J.S.A. 2A:15–6 and its accompanying authorization of a notice of *lis pendens*, it is not appropriate for a court to entertain a motion to discharge the notice of *lis pendens*. Rather, the disaffected party should, if properly warranted, move to dismiss the complaint or pertinent counts thereof for failure to state a claim upon which relief can be granted, or for a summary judgment, including a request to discharge the notice of *lis pendens*. [*Polk v. Schwartz*, 166 N.J.Super. 292, 299–300, 399 A.2d 1001 (App.Div.1979).]

It was further pointed out in *Polk* that discharging the notice of *lis pendens* without a prior determination of the merits of the claim could jeopardize plaintiff's realization of effective relief even if he ultimately succeeded on the merits. *Id.* at 300, [399 A.2d 1001].

We would add this footnote to *Polk*. The adversely affected party would be entitled to have the notice of *lis pendens* discharged if on motion he could demonstrate and obtain a determination by partial summary judgment to the effect that plaintiff in fact and in law had no right to a lien or to a claim affecting the title

to the realty in question, but only, if at all, some different claim or right against the defendant, as for damages.

*O'Boyle*, 169 N.J.Super. at 167, 404 A.2d 365. In New Jersey, the defendant must bear a heavy burden in order to prevail on either a motion to dismiss, *see* N.J. Court Rule 4:6–2; *Muniz v. United Hospitals Medical Center*, 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977), or on a motion for summary judgment, *see* N.J. Court Rule 4:46–1 *et seq.; Judson v. People's Bank & Trust Company of Westfield*, 17 N.J. 67, 110 A.2d 24 (1954).

In order to determine whether these procedures satisfy the requirements of due process, it is necessary to apply the test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> Identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903; *see Finberg v. Sullivan, supra*, 634 F.2d at 58. I will analyse these factors in the order stated by *Mathews*, beginning with the private interests of the litigants.

The effect of the filing of a *lis pendens* on a defendant's property and the consequent limitation on his or her right to alienate that property varies considerably depending upon the defendant's plans with respect to the realty. On the one hand, because the *lis pendens* does not affect the defendant's right to use and enjoy the land, a defendant who has no intention of alienating or mortgaging his or her land will suffer virtually no harm. If every defendant fell into this class, there would be no cause for concern about the New Jersey statute.

There is, however, another class of defendants, of which Fedders claims to be a member. These defendants have the present intention of selling their realty. It is easy to see that this class is seriously affected by the filing of a *lis pendens*. It is an unfortunate fact of life that modern litigation, like that described in the earlier times of Charles Dickens' *Bleak House*, has a way of dragging on for a long time. The complaint in this case is extremely long and complicated, and it is unlikely that this case will lend itself to rapid disposition. The claim asserted in this case seems to exceed the value of the property by approximately 60 million dollars, so it is unlikely that any purchaser can be found who would be willing to buy the property, even at a discounted price. Unless the *lis pendens* is dissolved, defendants who wish to alienate their property are seriously harmed. Even if the property is sold at a discount, the defendant has lost many dollars in comparison to the property's value before the *lis pendens* is filed.

This is not to say that the plaintiff does not have an important interest as well. The plaintiff in some cases may be significantly damaged if the land is conveyed because of the uniqueness of property. In some cases, a plaintiff who cannot obtain a specific piece of unique property can never be fully compensated. That situation, however, is not the present case. Chrysler is not concerned with the uniqueness of the property so much as it is concerned with its eventual ability to recover a money judgment from Fedders, a company Chrysler believes to be failing. This type of plaintiff also has an important interest in holding on to whatever security it can in order to be fully compensated for its injuries.

It can be seen then that there are significant interests of both plaintiffs and defendants when a *lis pendens* is filed. There is, however, little accommodation between these interests since, under the statute, the plaintiff automatically gets the benefits while the defendant bears all the burdens.

In analysing the second *Mitchell* factor, *i. e.*, the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, it can only be concluded that the risk is great. The plaintiff does not need to make any showing other than the bare filing of a complaint, in order to file its notice and obtain its priority over subsequent purchasers, mortgagees, and lienors. It is clear from the *O'Boyle* case, quoted above, that even a meritless complaint could tie up the defendant's land for a significant period of time without any means of removing the *lis pendens.*

In a case like the one before me, which cannot be said to obviously lack merit, it is likely that even if Chrysler loses the lawsuit, Fedders' land will be tied up indefinitely. This will happen so long as Chrysler can clear the relatively low hurdles of motions for dismissal or summary judgment. Even if Fedders prevails on such a motion, it is likely that its land will have been tied up for several months. The modality of relief through motion practice can hardly be said to be a swift one. *See Finberg v. Sullivan, supra.*

The parties have spent a lot of time arguing over whether prior notice and hearing are necessary for the filing of a notice of *lis pendens*. Indeed, the plaintiffs have not discussed a single case other than *Mitchell v. W.T. Grant* that even addresses the sufficiency of post-seizure procedures. Chrysler has apparently chosen to hang its hat entirely on the peg that pre-filing notice and hearing are not required by the Fourteenth Amendment. I need not reach that question, however, because the New Jersey statute provides neither a pre-filing hearing nor an effective post-filing hearing. Whether this case is likened unto *Fuentes v. Shevin* or unto *Mitchell v. W.T. Grant*, it is clear that the New Jersey Proceedings are inadequate. *See Finberg v. Sullivan, supra.* Virtually any type of rapid hearing, either before or after the filing, requiring the plaintiff to make even a minimal showing, would reduce the risk of erroneous deprivations. Nor can the posting of a bond be said to provide the defendant relief from errors, since that procedure itself involves the deprivation of significant amounts of money. The factor of avoiding erroneous deprivations, therefore, weighs heavily in favor of finding the statute unconstitutional.

Finally, the Government's interest must be considered. It cannot be denied that there are significant governmental interests involved. These interests were well-summarized by a student commentator:

> Without *lis pendens*, the power of the court to determine who owns a piece of realty could be effectively defeated by a simple transfer of the property, *pendente lite*, to a purchaser without notice. Litigation would be endless, as a sale made before a final decree would always render a decree of specific performance meaningless and necessitate a new suit. The resulting uncertainty in real estate transactions would seriously impair the efficiency of business activities in the state while undermining public confidence in the judicial process. It is submitted, therefore, that maintenance of a secure legal basis for real estate transactions, which benefits the public in general as opposed to a single class of individuals, is an interest of the state. *Lis pendens* protects this interest by assuring courts of control over the subject matter of real property litigation....

Note, *Does California's Statutory Lis Pendens Violate Procedural Due Process?* 6 *Pacific Law Journal* 62, 76–77 (1975); *see also Turner v. Houpt, supra.* My only disagreement with this statement is the author's separation of the notice aspects of *lis pendens* from its substantive aspect, *i. e.*, its creation of a priority on behalf of the plaintiff. It is the substantive aspect that triggers the due process clause. If the *lis pendens* procedure is found to be unconstitutional, it will be due to the priority created with insufficient process, so that even purchasers with notice of the litigation will take free from plaintiff's claim, unless the claim is such that it could be asserted against any holder of the realty, such as claim of a superior chain of title. Despite

this disagreement, I agree with the student's identification of the state interests involved in *lis pendens*. I also agree with the student's conclusion that these interests are very important. Their importance, however, does not in and of itself make the *lis pendens* statute constitutional. The Fourteenth Amendment requires that a reasonable accommodation be made among the valid interests of the state and the parties; *Mathews v. Eldridge, supra; Finberg v. Sullivan, supra.* As Judge Aldisert wrote in his dissent to the *Finberg* decision: "The question presented in any of these cases is straightforward and unsophisticated: how seriously is the complainant being hurt and how much will it cost to afford him or her a more effective procedure?" 634 F.2d at 84. On this understanding of the requirements of due process, he was not in disagreement with the *en banc* majority. 634 F.2d at 58.

The problem with the New Jersey statute is that it fails to make any meaningful accommodation for the legitimate interests of the defendant whose property is affected. I believe it would be inappropriate for me to describe *in dicta* a procedure that would satisfy due process, but it is certainly clear that New Jersey has been able to develop reasonable, low cost, and constitutionally sound procedures in analogous areas. *See* N.J. Court Rule 4:60–1 *et seq.* (Attachment and Sequestration). I am certain that either the New Jersey Legislature or the New Jersey courts, or the two working together, are capable of developing a constitutionally sound *lis pendens* procedure. *See Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406, *cert. denied*, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). I am equally certain that the present procedures do not satisfy the requirements of due process, either on their face or in the circumstances of the case before me, because of their failure to require the plaintiff to make even a minimal showing of entitlement to the rights created by the filing of the notice of *lis pendens* at a meaningful time either before or closely following the filing of the notice. I will, therefore, sign an order requiring the discharge of the *lis pendens* on Fedders' Edison property.

The next question to be determined is whether the venue of this lawsuit should be changed to the Southern District of New York, where another lawsuit is presently pending between Chrysler and Fedders. 28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) *cert. denied* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), the Third Circuit outlined the standards to be applied in considering such a motion:

> It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice " * * * should not be lightly disturbed." In accord with that sound doctrine, one district court recently correctly observed: "The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and " * * * unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."

*Id.* at 25 (citations omitted). Although the District Court has wide discretion in its determination of whether to grant a change of venue, a judge should specify his or her reasons for the decision, linking the evidence to the three statutory factors of convenience of parties, convenience of witnesses, and the interests of justice. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). *See generally* Wright, Miller and Cooper, *Federal Practice and Procedure*, §§ 3841–3854. When these standards are applied to the present case, it must be concluded that venue should remain here in New Jersey.

Chrysler brought its litigation to New Jersey because it wishes to assert a claim against real estate located in New

Jersey. My decision discharging the *lis pendens* does not eliminate those claims from the lawsuit, and Chrysler is entitled to pursue them. It is at least questionable as to whether a New York court would have the necessary *in rem* jurisdiction to impose a constructive trust or an equitable lien on property in New Jersey. *See Bullock v. Bullock*, 52 N.J.Eq. 561, 30 A. 676 (E. & A.1894). While a New York court might be able to provide analogous relief, such as an injunction ordering Fedders to convey an interest in the land, the fact that Chrysler could not directly pursue the specific type of relief that it seeks constitutes sufficient prejudice to deny the venue motion.

It is true that there may be some duplicative discovery, but I believe that the parties, if they cooperate with each other and the courts involved, can work those problems out. The problems arising from somewhat duplicative proceedings, however, are not sufficient to justify the transfer. See *Shutte v. Armco Steel Corp., supra.*

■ The only question remaining to be decided is whether the case before me should be stayed pending resolution of the litigation in the Southern District of New York.

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936). Fedders argues that because the Southern District action began first, this Court should await the result of that litigation before proceeding with the closely related suit that is before me. It is certainly true that this suit is closely related to the one in the Southern District. It is also true that Fedders' position is in accord with precedent establishing a general rule that the court first having jurisdiction over the dispute should decide it first, with other

actions stayed pending that decision. *See, e. g., Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535, 6 L.Ed. 152 (1824); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). Nevertheless, the decision as to whether to grant a stay remains a discretionary one, and a court must be careful to avoid prejudice to the parties. *See* Wright & Miller, *Federal Practice and Procedure*, § 1360, vol. 5, p. 639. As the Supreme Court has stated with regard to the question of whether to grant a stay:

> Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Kerotest Manufacturing Co. v. C–O–Two Co.*, 342 U.S. 180, 183–184, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).

■ Despite the administrative convenience of staying the case before me to await the resolution of the Southern District lawsuit, I have concluded that the equities weigh in favor of not staying this lawsuit. I have just declared New Jersey's *lis pendens* law unconstitutional, and have thereby left Chrysler without any assurance that the land will still be there if they are successful in proving their entitlement to a constructive trust or an equitable lien. Discovery is incomplete in New York and if Chrysler is forced to complete that trial and subsequent appeals, it will likely be several years before it can return to this forum to prosecute its claims against the land. Moreover, in view of the New Jersey precedent contained in *Bullock v. Bullock, supra*, it is questionable whether Chrysler could obtain the relief it seeks here in the New York court, even with an appropriate amendment of the pleadings. In view of business and litigation realities, the imposition of a stay may force Chrysler to wait for too long a period for resolution of its claim against the Edison land. The case

before me is, if anything, more all-encompassing than the New York lawsuit, including as it does, both new parties and new claims. These factors also weigh against the grant of a stay. I will permit this lawsuit to proceed.

To sum up: I have denied the defendants' motion for dismissal, change of venue, and/or a stay. I have, however, concluded that the New Jersey *lis pendens* law is unconstitutional and have therefore ordered a discharge of the *lis pendens* filed by the plaintiff.