Vance TOLSTRUP, Appellant,

v.

Joan MILLER, Elizabeth J. Burkhart
and Audrey Osborn, Appellees.

No. S–1080.

Supreme Court of Alaska.

Oct. 24, 1986.

Lawrence A. Pederson, Paul J. Nangle, Paul J. Nangle & Associates, Anchorage, for appellant.

Joel D. DiGangi, Law Offices of Joel D. DiGangi, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This case presents the question of whether a stipulation to dismiss with prejudice certain misrepresentation claims precludes a foreclosure on real property when the underlying claims arose from the same transaction. Superior Court Judge Joan M. Katz concluded that the doctrine of res judicata barred the instant nonjudicial foreclosure, and granted plaintiff's summary judgment motion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1978, Vance Tolstrup and Michael Huffman were involved in a small computer business called Data-Com Systems, Inc. In June 1978, Huffman arranged for an $80,000 loan from Alaska National Bank of the North (ANBN) for Data-Com. Tolstrup was reluctant to sign the note as a personal co-surety. To protect himself in case he was required to fulfill his guaranty and pay on the note, Tolstrup sought security from Huffman. Huffman pledged to partially indemnify Tolstrup in case Tolstrup had to pay ANBN on the guarantee.[1] Huffman also executed a deed of trust on real property that Huffman owned in Anchor Point, Alaska, in favor of Tolstrup. With this collateral, Tolstrup signed as one of the personal guarantors for the ANBN loan.[2] Tolstrup subsequently paid substantial amounts of money to ANBN on his guarantee. In February 1979, the personal and financial problems of Data-Com caused the corporation to close.

In 1979, Huffman filed a third-party complaint against Tolstrup[3] alleging unlawful activity in connection with their corporation. In 1982, Tolstrup counterclaimed, alleging that Huffman fraudulently induced him to guarantee the $80,000 loan by misrepresenting the value of the property offered as security. Tolstrup concluded "[a]s a result of the foregoing, defendant has been damaged in the amount of $80,000

---

1. The obligation secured by the deed essentially provided that if Tolstrup became obligated to pay ANBN on his guarantee, Huffman would pay him two-thirds of any amount Tolstrup paid in excess of what Huffman himself might pay as a co-guarantor.

2. Tolstrup was one of four co-sureties on this loan; two other officers and Huffman also signed.

3. The third-party complaint was filed in a case which Alaska Pacific Bank instituted against Huffman to recover other Data-Com debts.

plus interest and has been forced to pay approximately $30,000 in repayment."

In November 1982, Huffman and Tolstrup agreed to dismiss their claims and counterclaims with prejudice. Their stipulation specifically included a dismissal of Tolstrup's counterclaim against Huffman, but the parties disagree about exactly which claims were extinguished.

By August 1983, Tolstrup had paid approximately $34,000 to ANBN for the 1978 loan which he had guaranteed. Huffman had defaulted on his agreement to indemnify Tolstrup.[4] Under the terms of the deed of trust, Tolstrup then began a nonjudicial foreclosure on the secured property.[5] At that time, the property was owned by plaintiffs Miller, Burkhart, and Osborn (collectively referred to as Miller). They had purchased various ownership rights from Huffman in late 1978, between the time of the loan transaction and Data-Com's collapse.

Miller sought to enjoin the foreclosure. In her motion for summary judgment, Miller asserted that the 1982 stipulation dismissing Tolstrup's counterclaims against Huffman barred Tolstrup's foreclosure action. The superior court granted the summary judgment motion, concluding that the 1982 stipulation involved the identical transaction and that res judicata, thus, precluded the foreclosure. We agree.

## II. DISCUSSION

### A. *Res Judicata*

Tolstrup contends that the claim dismissed by the stipulation was for the tort of fraud, while the present foreclosure is based on Huffman's default on the indemnity agreement. Therefore, he argues, res judicata does not apply and the foreclosure is not barred as a matter of law. Miller, however, argues that res judicata precludes Tolstrup's foreclosure because it is based on either the same claim or one which could have been raised in the earlier lawsuit between Huffman and Tolstrup.

 A stipulation to dismiss claims with prejudice operates as an adjudication upon the merits. Civil Rule 41(a)(1). Other jurisdictions have held that such a stipulation is just as valid as a final judgment resulting from a trial on the merits, and is res judicata as to all issues that were raised or could have been determined under the pleadings. *Suttle v. Seely*, 94 Ariz. 161, 382 P.2d 570, 572 (App.1963); *Bank of America v. Department of Mental Hygiene*, 246 Cal.App.2d 578, 54 Cal.Rptr. 899, 903 (1967).[6] We agree and hold that the dismissal here had the same res judicata effect as a final judgment after trial.

 Under the doctrine of res judicata, a final judgment bars a subsequent suit, between the same parties or their privies, upon the same claim or demand. *Calhoun v. Greening*, 636 P.2d 69, 71–72 (Alaska 1981); *Moran v. Poland*, 494 P.2d 814, 815 (Alaska 1972). A final judgment extinguishes all claims "with respect to all or any part of the transaction, or series of connected transactions" out of which the previous action arose. Restatement (Second) of Judgments § 24 (1982). In addition, res judicata bars a second suit when the matter therein *could have been* decided in the first suit. *Pankratz v. State, De-*

---

4. Huffman had neither paid ANBN in his capacity as guarantor, nor had he paid Tolstrup according to the terms of the deed of trust. Huffman was in default *already* at the time of Tolstrup's 1982 counterclaim. He remained in default after the stipulated dismissal.

5. Tolstrup filed and recorded a notice of default against the property. The notice stated that it would be sold at a public auction unless Huff-

man paid him $23,000 plus interest and costs. This is two-thirds of the amount that Tolstrup paid to ANBN.

6. *See also* 47 Am.Jur.2d *Judgments* § 1095 (1967) (a stipulation of dismissal amounts to a decision on the merits barring further litigation on the same subject matter between the parties); Annot., 91 A.L.R.3d 1170 (1979).

*partment of Highways*, 652 P.2d 68, 74 (Alaska 1982).

To decide whether res judicata precludes Tolstrup's foreclosure, we must determine whether the underlying claim is the same as, or transactionally connected with, the claim extinguished by stipulation in the earlier lawsuit. Tolstrup's original counterclaim alleged that Huffman misrepresented the value of the secured property, thereby fraudulently inducing him to accept the deed of trust as collateral and co-sign the ANBN loan. Tolstrup sought $80,000 in damages, which was also the principal amount of the ANBN loan. This claim, although pled in tort, concerns the circumstances surrounding the signing of the guaranty. Tolstrup argues that the present foreclosure is based not upon fraud and misrepresentation, but upon Huffman's default on the indemnity agreement contained in the deed of trust. He contends, therefore, that this is wholly separate from the previous suit.

■ A mere change in the legal theory is not sufficient to prevent the operation of res judicata. *Pankratz*, 652 P.2d at 74. We conclude that both the counterclaim for fraud and the nonjudicial foreclosure arose from the same transaction: Huffman's inducements for Tolstrup's co-signing on the $80,000 loan. Characterizing the first claim s a tort and the second as a default will not avoid the effects of res judicata when the underlying claims are part of the same transaction. Tolstrup could have, and should have, joined a claim for default damages or judicial foreclosure to his 1982 counterclaim to Huffman's third-party action against him. The dismissal of the counterclaim waived Tolstrup's right to proceed later against the deed of trust for the default. The claim for default was part of the same transaction as the prior counterclaim, and he cannot now revive that extinguished claim.[7]

■ We agree with the superior court that Tolstrup's foreclosure action is barred under the general rules of res judicata. First, as a subsequent purchaser of an interest in the property, Miller is in privity with Huffman.[8] Second, the stipulation of dismissal with prejudice is a final judgment on the merits for purposes of res judicata. Third, both the dismissed counterclaim and the foreclosure action involve the same transaction, despite the change in legal theory.

### B. *Attorney's Fees*

Tolstrup argues that the trial court's award of $5,000 in attorney's fees to Miller is excessive in light of the limited time spent on the case. Miller contends that $5,000 is a reasonable amount since it complies with the rate schedule set out in Civil Rule 82(a)(1).[9]

■ Rule 82(a)(1) grants the trial court discretion to award fees in a reasonable amount. We will not reverse an award of attorney's fees "unless manifestly unreasonable, arbitrary or designed for a purpose other than justly deserved compensation." *Fairbanks Builders v. Sandstrom Plumbing & Heating*, 555 P.2d 964, 966–67 (Alaska 1976) (footnotes omitted). The trial court based the award on the

---

7. We reach our result solely on the points presented in the parties' briefs and oral arguments. We do not review points neither raised below nor included in the points on appeal. Saxton v. Splettstoezer, 557 P.2d 1126, 1127 (Alaska 1977). Thus, we express no opinion on whether claim preclusion in general applies to nonjudicial remedies.

We further note that nothing in our decision today would prevent a party to a settlement from expressly reserving a right to foreclose nonjudicially. Such reservation could appear in the stipulated dismissal or in a separately executed settlement agreement. The record here, however, reveals no such reservation.

8. Although the three appellees purchased different interests in the property, each is in privity with Huffman as a successor in interest.

9. Civil Rule 82 sets out a schedule for computing attorney's fees in average cases according to whether the case was "contested," "without trial," or "non-contested."

potential liability of $57,000, the amount by which Huffman was in default. $5,000 coincides with the fee schedule in Civil Rule 82(a)(1) for a case "without trial." There is no evidence that this award of attorney's fees was manifestly unreasonable. The trial court did not abuse its discretion.

We AFFIRM the grant of summary judgment and the award of attorney's fees.

RABINOWITZ, Chief Justice, dissenting.

Tolstrup's present action for foreclosure is based on Huffman's default in payments to Tolstrup pursuant to the deed of trust. Tolstrup's prior counterclaim asserted that he was fraudulently induced into accepting the deed of trust and co-signing the ANBN loan. I do not view the two actions as arising out of the same transaction and therefore would not hold that Tolstrup's present action for foreclosure is barred by res judicata.

The Restatement (Second) of Judgments § 24 (1982) states that the claim extinguished by a final judgment "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Comment b to § 24 elaborates on the concept of "transaction":

> In general, the expression connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.

A judgment on one claim does not bar a subsequent claim if the two claims are not part of the same transaction.[1]

The majority concludes that "the counterclaim for fraud and the foreclosure action both arose from the same transaction: Tolstrup's co-signing of the $80,000 loan." Tolstrup's counterclaim for fraud clearly arose out of the co-signing. Tolstrup alleged that he had been fraudulently induced to co-sign the loan by Huffman's misrepresentation of the value of the property which secured Tolstrup's guarantee. The dismissal of this counterclaim therefore should serve to bar any subsequent dispute as to the validity of the guarantee between Tolstrup and Huffman, and their privies. Res judicata should bar subsequent suits arising out of Tolstrup's guarantee and co-signing, such as claims of lack of capacity or mistake.

I do not view Tolstrup's foreclosure action, however, in any fair sense as arising out of the co-signing of the ANBN loan. There is no "common nucleus of operative facts" between the two claims. Tolstrup's claim in the foreclosure action is based on Tolstrup's having made payments on the loan and Huffman's not repaying Tolstrup

---

1. *See, e.g., Gallagher v. Frye,* 631 F.2d 127 (9th Cir.1980) (Mandamus action in state court to require employer to reinstate fired employee with backpay does not preclude subsequent civil rights suit for damages for wrongful discharge. The mandamus action arose out of the employer's failure to comply with a Civil Service Board order while the damages suit arose out of the employer's attempts to discharge the employee in the first instance. It was not necessary to litigate in the mandamus action the merits of the underlying termination. Although the second claim could have been brought at the same time as the first claim, joinder of the claims would have been permissive, not compulsory); *Bankers Trust Co. v. Pacific Employers Insurance Co.,* 282 F.2d 106 (9th Cir.1960) (Action obtaining judgment fixing amount of loss under insurance policy does not bar subsequent action for misrepresentation of the value of the policies. The two actions are maintained by entirely different facts; the first action depending on proof of the contract, plaintiff's performance and defendant's failure to perform, while the second depending on proof of fraud in the inducement of the contract); *Chrysler Corp. v. Fedders Corp.,* 519 F.Supp. 1252 (D.N.J.1981) (Action obtaining partial summary judgment that plaintiff owned defendant's stock as part of the consideration for sale of company and that defendant owed plaintiff dividends and interest from the stock, did not bar subsequent action alleging that defendant entered into agreement for the stock conveyance as part of a fraudulent conspiracy to obtain corporate assets without proper consideration. The initial claim for dividends and interest was an "independent obligation," separate from whatever breaches may have occurred with respect to the underlying contract).

two-thirds of his payments, as required by the deed of trust. This claim has nothing to do with the circumstances surrounding the co-signing.[2]

2. To illustrate the point, if Tolstrup had not made a payment on the ANBN loan, or if Huffman had not failed to repay Tolstrup under the deed of trust, Tolstrup still would have been able to bring his claim for fraud. The fraud claim was available to Tolstrup from the moment he co-signed the loan. However Tolstrup's foreclosure action could not arise until he had actually made payments and Huffman had failed to repay.

The fact that Tolstrup had made some of his payments on the ANBN loan at the time he pleaded the fraud counterclaim should not mean that dismissal of that counterclaim bars the foreclosure action if the two claims are not part of the same transaction. *See, e.g., Gallagher*, 631 F.2d 127; *Bankers Trust Co.*, 282 F.2d 106; *Chrysler Corp*, 519 F.Supp. 1252. If Huffman had assaulted Tolstrup, the dismissal of the fraud counterclaim would not bar a subsequent assault claim even if Tolstrup could have brought an assault claim at the time he brought his fraud counterclaim.