HEALTH BETTERMENT FOUNDATION
v. THOMAS, ADMINISTRATOR.

5-743                                    283 S. W. 2d 863

Opinion delivered November 14, 1955.

[Rehearing denied December 12, 1955.]

*Campbell* and *Campbell*, for appellant.

*P. E. Dobbs* and *M. C. Lewis, Jr.*, for appellee.

530

LEE SEAMSTER, Chief Justice. This is an appeal by the appellants, from a decree of the Garland Chancery Court, whereby appellee, B. W. Thomas, Administrator of the Estate of A. W. Petersohn, deceased, recovered a judgment against appellants in the sum of $27,000. This judgment was declared a specific lien against the property of the Health Betterment Foundation, appellants herein, and based on a lis pendens filed by the appellee on March 31, 1953.

In early September of 1951, A. W. Petersohn and certain of the appellants became acquainted while attending a medical institute meeting in Michigan. A. W. Petersohn, a man 77 years old, subsequently came to Hot Springs, Arkansas, for a three week visit. Immediately thereafter, he went to Kansas for a two week visit. He returned to Hot Springs on or about October 4, 1951, and entered the New Park Hospital for treatment of an asthmatic heart condition. Dr. Petersohn remained a patient in the New Park Hospital until the date of his death, October 16, 1951. He reportedly signed two deeds on October 12, 1951, in which he conveyed certain properties in Michigan and Kansas, to the appellants. The appellants operated the New Park Hospital. These deeds were recorded on the day of the decedent's death, and shortly thereafter, the appellants sold the property.

B. W. Thomas was appointed as Administrator of the Estate of Dr. A. W. Petersohn, by the Garland Probate Court on May 14, 1952. On the same day, the court ordered and directed the administrator to prosecute the instant suit against the appellants, for the benefit of the estate.

The appellee instituted this suit in the Garland Chancery Court on May 17, 1952, alleging that the appellants entered into a conspiracy to induce Dr. Petersohn to deed his property to the Health Betterment Foundation, a mutual benevolent corporation, domiciled in Hot Springs, Arkansas. It was further alleged that Dr. Petersohn executed and delivered to the appellants,

deeds to properties he owned in the States of Kansas and Michigan; that said deeds were procured by means of confidential relationship, undue influence, coercion, duress, misrepresentation, fraud, and while the decedent was mentally incompetent. The appellants, all directors and officers of the Health Betterment Foundation, are: Cora Thomson, J. Clay Holmes, Verna Noble Pape, Campbell E. Holmes and M. Charlotte Holmes.

Evidence was presented by way of depositions, oral testimony and exhibits; the case being continued from time to time for the purpose of procuring further testimony.

On October 20, 1954, the trial court entered judgment upon the complaint for the appellee, and decreed that appellee, as administrator of the estate, was entitled to have judgment against the appellants, jointly and severally, for the sum of $27,000. This sum represented the proceeds derived by the appellants, from the sale, conveyance and transfer of the decedent's property. This judgment was declared a specific lien against the property of the Health Betterment Foundation.

The appellants list four points on appeal, for reversal of the trial court's decree, they are: (1) the decree is against the weight of the testimony, there being little substantial evidence upon which to predicate a finding of duress, lack of consideration, or fraud; (2) the Chancery Court erred in not sustaining appellant's motion to dismiss; the heirs of Petersohn, deceased, being the real parties in interest; (3) Petersohn's mental capacity to dispose of his property as he saw fit was established by the great weight of the testimony; and, (4) the Chancery Court erred in impressing a specific lien against appellant's property in Garland County, Arkansas.

Initially, we will take up point 2 of appellant's contentions for reversal of the trial court's decree, which involves the question of whether the administrator had a right to institute this suit. The instant case does not come within the previous holdings of this court, as

handed down in the cases of *Jones* v. *Jones,* 107 Ark. 402, 115 S. W. 117, and *Cranna, Administrator* v. *Long,* 225 Ark. 153, 279 S. W. 2d 828.

We find the probate court was empowered to order and direct the administrator to prosecute the instant suit, for the benefit of the estate. Full authority for the court's action is found in Section 94 of Act 140, Acts of 1949; Ark. Stats., 1947, Section 62-2401, pocket supplement. Under the direction of the probate court, the administrator has the right to maintain the suit, whether its object is to recover real estate or the proceeds derived from the sale of real estate, when it has been ascertained that said property has been wrongfully obtained from the decedent. We cannot agree with appellant's contention, that the probate court had no right to direct the administrator to bring the instant suit.

The appellants have insisted that the chancellor's decree is against the weight of the testimony, there being little substantial evidence upon which to predicate a finding of duress, lack of consideration or fraud. They earnestly insist that at the time of the conveyance, Dr. Petersohn possessed sufficient mental capacity to dispose of his property as he saw fit. We cannot say that this finding of the chancellor is against the preponderance of the evidence.

In *Hightower* v. *Nuber,* 26 Ark. 604, 611, we said: "And in a court of equity, where bad faith and unconscionable acts can have no allowance or favor, the strength of mental capacity of the parties, the circumstances surrounding them, their relationship, etc., make up the grounds upon which the court can find the real influences that produced the conveyance. And when it is discovered that the party in whose favor the conveyance was made possessed an undue advantage over the grantor, and in person, or by agent, exercised an improper influence over such one, and to advantage of the grantee, it is an act against conscience and within the cognizance of a court of equity." See, also, *West* v.

*Whittle,* 84 Ark. 490, 106 S. W. 955; *Thiel, Special Adm'r.* v. *Mobley,* 223 Ark. 167, 265 S. W. 2d 507.

This court has said: "When a will is written, or proved to be written by a person benefiting by it, or by one standing in the relation of attorney or counsel, and who is also benefited by it,—these are circumstances to excite stricter scrutiny and require stricter proof of volition and agency." The court then quotes with approval from *Breed* v. *Pratt,* 18 Pick. R. 115, as follows: "It is incumbent on those, who, in such a case, seek to establish the will, to show beyond reasonable doubt, that the testator had both such mental capacity, and such freedom of will and action, as are requisite to render a will legally valid." *McDaniel* v. *Crosby et al.,* 19 Ark. 533.

The record reveals that the deceased was in a dying condition at the time he signed the deeds to convey his property to the appellants. The medical records show that appellants administered drugs and narcotics to the deceased, in order to ease his pain, during the last few days of his life. The medical records also reveal that deceased was irrational, complained of weakness, refused to sign checks and expressed a desire to leave the hospital and return to Battle Creek, Michigan. There was strong indication of physical and mental deterioration.

The deeds were prepared by the secretary of the appellant corporation and were kept readily available at all times, in Dr. Petersohn's hospital room. The decedent consistently refused to sign these deeds. Testimony of record shows several attempts by appellants to obtain Dr. Petersohn's signature to the deeds; on the pretense that he was signing a check or giving them his name. After considerable deception and relentless pressure, the appellants were finally successful in getting Dr. Petersohn's signature to the two deeds; which conveyed to the appellants certain properties located in Kansas and Michigan. Elizabeth Hollenbeck, a niece of the deceased, was instrumental in procuring Dr. Petersohn's signature to these two deeds; and, on the

same date, she obtained his signature to another deed which conveyed to her certain properties located in Battle Creek, Michigan. Shortly thereafter, the appellants disposed of the properties that they had obtained from Dr. Petersohn. The appellants gave Elizabeth Hollenbeck the sum of $2,500, in addition to a deed to 18 acres of land that had been obtained from Dr. Petersohn.

We think the preponderance of the evidence shows the chancellor reached the correct decision on these points.

Finally, we think the chancellor erred in declaring a specific lien on the property of appellants, as described in the lis pendens. Our lis pendens statute (Ark. Stats. Sec. 27-501) is not applicable to an action seeking only a money judgment, since, by its terms, it applies only to actions affecting "title or any lien on real estate or personal property." *Tolley* v. *Wilson*, 212 Ark. 163, 205 S. W. 2d 177. The filing of the lis pendens notice in this action, seeking a money judgment, did not constitute any lien on appellant's property, since, the appellee has failed to show that appellants have applied the proceeds derived from the sale of Dr. Petersohn's property, to the acquisition of the property set out in the lis pendens notice.

That portion of the trial court's decree, assessing judgment against appellants in the sum of $27,000, is affirmed. The portion of the decree declaring a specific lien on appellant's property, as set out in the lis pendens notice, is reversed.