166 N.J. Super. 292 (1979)
399 A.2d 1001
IRWIN POLK AND LEA POLK, PLAINTIFFS-APPELLANTS,
v.
DAVID SCHWARTZ AND IRENE SCHWARTZ, HIS WIFE; MILTON SCHWARTZ; SIDNEY SCHWARTZ; ELLIOT S. GROSS; S.S.R. REALTY ASSOCIATES, A NEW JERSEY PARTNERSHIP; EMEK REALTY ASSOCIATES, A NEW YORK PARTNERSHIP; CHAVARIM, INC., A NEW JERSEY CORPORATION; ISAAC BULKA; EDWARD EINHORN; CARMEL REALTY ASSOCIATES, A NEW YORK LIMITED PARTNERSHIP; 17 REALTY ASSOCIATES, A NEW JERSEY CORPORATION; HOWARD M. LAWN AND PEARL B. LAWN, HIS WIFE, INDIVIDUALLY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1979.
Decided February 23, 1979.
*294 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. Frank J. Ferry, attorney for appellants (Mr. Matthew H. Powals, of counsel).
Mr. Samuel Krantz, attorney for respondents.
The opinion of the court was delivered by SEIDMAN, J.A.D.
By leave granted, plaintiffs appeal from an order discharging of record a lis pendens filed in connection with a suit instituted by them against defendants in Chancery Division.
The complaint alleged that plaintiffs are the owners of a nursing home facility in Atlantic City which they acquired in 1974 from Senator Holding Corporation, and also the successors in interest of the former Senator Holding Corporation which leased the premises in 1971 to the Senator Convalescent Center Corporation, all the stock of which was owned by plaintiffs. In 1972 plaintiffs sold 90% of their stock to a group of investors "organized and directed" by defendants David Schwartz and Elliot S. Gross, for the sum of $900,000, of which one-half was paid in cash and the remainder was to be paid in monthly installments of $4,200 over a period of ten years, at the expiration of which the balance would be due and payable. According to the complaint, the sole asset acquired by the stockholders was the *295 lease to operate the nursing home. Plaintiffs alleged further that in 1975 the Senator Convalescent Center Corporation subleased the nursing home to Shore Manor, the principals of which were defendants David Schwartz, Elliot S. Gross, Milton Schwartz and Sidney Schwartz.
Plaintiffs contended in their complaint that the individual defendants David, Milton and Sidney Schwartz and Elliot Gross thereafter "conspired to deplete the corporation [SCCC] of its assets and working capital, and to defraud the plaintiffs of the sums due under the lease and of the balance due under the sale of the stock by performing" certain "overt acts." These acts included, allegedly, mismanaging the financial and nursing care operation of the home, resulting in a civil suit by the Public Advocate and the appointment of a state supervisor; drawing excessive salaries from the operating facility; charging personal expenditures, such as car rental, legal fees, travel and life insurance, to the operating facility; borrowing an interest-free total of $140,000 from the facility without a corporate resolution and failing to repay said loans; failing to pay federal withholding taxes and state unemployment disability insurance after deducting same from employees' wages, resulting in government levies against the corporation; withdrawing $60,581.75 from Shore Manor, Ltd. and advancing such sum to Atlantic Senator Associates without a corporate resolution, security or interest; converting $180,000 of patients' personal Medicaid funds to personal use; acquiring adjacent land in the name of David Schwartz' son-in-law for a parking lot with Shore Manor, Ltd. funds, which land was then leased to Shore Manor, Ltd. at an excessive monthly rate of $2,500.
Plaintiffs also alleged that an order was entered in Chancery Division appointing a medical receiver for the nursing home. They contended that this "deprived the plaintiffs of the sums due from the defendants" and was allegedly caused by "the conduct and financial mismanagement of the defendants resulting in depleting the corporation of sufficient *296 funds and assets to carry on the operation of the nursing home."
They further alleged that during this period of alleged financial mismanagement of the nursing home a total of $632,174.63 due them under the lease and the contract of sale was fraudulently retained by the individual defendants and used to purchase certain properties in Atlantic City. The breakdown of sums allegedly due plaintiffs is as follows: $184,066.60 for rent due under the lease; $65,000 for a percentage rent due under the lease; $28,108.03 for real estate taxes which defendants were obligated to pay under the lease, and $355,000 representing the balance remaining on the contract of sale. These amounts accrued during the period from September 1, 1977 to June 19, 1978. The first four counts of plaintiffs' complaint demanded judgment in these amounts.
In the fifth count plaintiffs sought to have a constructive trust imposed upon certain properties acquired by the individual defendants in Atlantic City either in their names, in the names of certain corporations or in other individual names. Plaintiffs alleged that defendants David, Milton and Sidney Schwartz and Elliot Gross conspired to deplete Shore Manor, Ltd., of its assets and working capital, thereby depriving plaintiffs of the sums due them, in order to use the funds to acquire the properties in Atlantic City. A constructive trust was sought on these properties "in order to satisfy the sums due and owing" plaintiffs. The properties listed by plaintiffs were all acquired between June 1, 1977 and July 27, 1978, and were purchased at prices ranging from $5,500 up to $1,500,000. Title was taken in the following names: four in the name of defendant 17 Realty Associates, Inc., a New Jersey corporation with its principal place of business located at 181 Beach, 145th Street, Belle Harbor, New York, the residence of defendant David Schwartz; three in the name of defendant David Schwartz; one in the names of defendant 17 Realty Associates and defendant Milton Schwartz; one in the names of defendants *297 Edward Einhorn and Milton Schwartz; one in the names of defendants David and Irene Schwartz and Howard and Pearl Lawn; one in the name of defendant S.S.R. Realty Associates, a New Jersey partnership with its principal place of business stated to be 181 Beach, 145th Street, Belle Harbor, New York; one in the name of Chavarim, Inc., a New Jersey corporation with its principal place of business located at defendant David Schwartz' place of residence; one in the name of defendant Isaac Bulka, and two in the name of David Schwartz t/a United Parking Systems (Pal. 16). One of the properties acquired in the name of David Schwartz for $100,000 was subsequently transferred to Emek Realty Associates, a New York partnership with its principal place of business located at defendant David Schwartz' residence, for $192,500. Additionally, one was transferred from defendant Chavarim, Inc. to defendant Carmel Realty Associates, a New York limited partnership with its principal place of business located at defendant David Schwartz' residence, for $1. Another property, initially acquired in the name of defendant David Schwartz for an unspecified amount and at an unspecified time, was transferred to defendant 17 Realty Associates, Inc. for $1. The last property involved was acquired in the name of defendant Chavarim, Inc. for $1, but the complaint does not indicate from whom the property was acquired.
In other counts, plaintiffs also sought damages for failure to keep the leased premises in good repair as required by the lease, and also punitive damages.
In granting defendants' motion to discharge the lis pendens, which described the above-mentioned parcels of real estate, the trial judge stated that "it is obvious that on the face of the complaint filed in this cause, which seeks money damages notwithstanding the fact that it says that certain moneys were used in the corporation improperly or albeit illegally, there is no right in the opinion of the Court under the present statute to file a lis pendens."
*298 N.J.S.A. 2A:15-6, in pertinent part, provides for the filing of a notice of lis pendens in any action "the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumbrance thereon (emphasis supplied). It may not be filed in an action to recover a judgment for money or damages only. N.J.S.A. 2A:15-6; Grabowski v. S. & E. Constr. Co., Inc., 72 N.J. Super. 1, 4 (Ch. Div. 1962). It is evident that the trial judge's concept in this case was that plaintiff's cause of action was essentially, if not exclusively, for the recovery of money damages. But this would not be so if the fifth count of the complaint sets forth a sufficient cause of action for the imposition of a constructive trust. In this regard it is to be noted that a claim for money damages does not necessarily preclude the assertion of a claim for alternate or additional equitable relief. See Kaplan v. Cavicchia, 107 N.J. Super. 201, 205 (App. Div. 1969); Hussong Dyeing Mach. Co. v. Morris, 89 A. 249 (Ch. 1913); not officially reported). See also Suess v. Stapp, 407 F.2d 662 (7 Cir.1969).
There is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of lis pendens may be filed under a statute such as ours. General Elec. Credit Corp. v. Winnebago of N.J., 149 N.J. Super. 81 (App. Div. 1977); 54 C.J.S. Lis Pendens § 23 at 592. See Suess v. Stapp, supra; Grossfeld v. Beck, 42 A.D.2d 844, 346 N.Y.S.2d 650 (App. Div. 1973); Keating v. Hammerstein, 196 App. Div. 18, 187 N.Y.S. 446 (App. Div. 1921); Novitsky v. Ruda, 138 Misc. 346, 244 N.Y.S. 699 (Sup. Ct. 1930); cf. Health Betterment Foundation v. Thomas, 225 Ark. 529, 283 S.W.2d 863 (Sup. Ct. 1955). It has been held that the propriety of a lis pendens must stand on the allegations in the pleadings. Will of Sabatino, 90 Misc.2d 56, 393 N.Y.S.2d 671 (Surr. Ct. 1977); that is, upon a motion to cancel or discharge a lis pendens, the court may not consider anything other than whether the complaint sufficiently states a cause of action to impress a trust. For this purpose, the allegations of the complaint must be taken *299 as true. Novitsky v. Ruda, 138 Misc. 346, 244 N.Y.S. 699 (Sup. Ct. 1930). The merits of the litigation or whether the plaintiff will ultimately prevail is not relevant on such motion. Deitch v. Atlas, 132 N.Y.S.2d 806 (Sup. Ct. 1954). This is akin to the long-settled rule of law applicable to motions to dismiss a complaint for failure to state a claim upon which relief can be granted, that all facts alleged in the complaint and legitimate inferences drawn therefrom are deemed admitted. Kelly v. Hoffman, 137 N.J.L. 695, 697-698 (E. & A. 1948); Hirsch v. Travelers Ins. Co., 134 N.J. Super. 466 (App. Div. 1975).
As indicated, the trial judge viewed plaintiffs' cause of action as being merely one for the recovery of money damages, thus precluding the filing of a notice of lis pendens. He did not directly address the question of whether the facts alleged in the fifth count, if true, would entitle plaintiffs to the equitable relief sought therein. But on its face the fifth count of the complaint is founded upon more than the mere failure of a creditor to pay a debt. Respondents' brief demonstrates their awareness of this, since the contention advanced therein is that
* * * the Appellants have failed to address the issue as it affects the Court's decision to allow a lis pendens to remain on property. A claim for money damages only will not permit the filing of a lis pendens. The Appellants have not been precluded from exercising their claim for a constructive trust with the discharge of the lis pendens. They have only been precluded from needlessly encumbering the property of the defendants while they assert such a claim.
It appears to us that unless the complaint unequivocally recited a cause of action which, under the statute, would not permit the filing of a notice of lis pendens, it was not appropriate for defendants to move directly for a discharge of the notice; instead, they should have moved either to dismiss the complaint or pertinent counts thereof for failure to state a claim upon which relief can be granted or for summary judgment, which motion would have included a *300 request to discharge the notice of lis pendens. In that way, the legal sufficiency of the count in question or of the facts therein stated, or the existence of genuine issues of material fact, could have been tested in accordance with well-settled applicable rules of law. If it had been determined that there was no legally sufficient basis for plaintiffs' claim of a constructive trust, the pertinent counts would have been dismissed and the notice of lis pendens discharged. It should be noted that such course of action is still available to defendants. Cf. St. Regis Paper Co. v. Santa Clara Lumber Co., 62 App. Div. 538, 71 N.Y.S. 82 (App. Div. 1901). Otherwise, there is the incongruous prospect that plaintiffs may ultimately succeed in establishing their entitlement to a constructive trust on the affected realty, but will nonetheless have been deprived in the interim of the statutory protection of a notice of lis pendens.
Accordingly, the order discharging the notice of lis pendens is reversed and the said notice of lis pendens is reinstated.