214 N.J. Super. 328 (1986)
519 A.2d 368
HILTON HOTELS CORPORATION, PLAINTIFF,
v.
PIPER COMPANY, A NEW JERSEY PARTNERSHIP, DEFENDANT.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided October 3, 1986.
*330 Adrian M. Foley, Jr. for plaintiffs (Connell, Foley & Geiser, attorneys).
Stephen Hankin for defendants (Hankin, D'Amato & Sandson, attorneys).
GIBSON, J.S.C.
The within action was instituted by Hilton Hotels Corporation seeking a determination of the respective rights and obligations of the parties under a certain letter dated February 28, 1980. In the letter Hilton obligated itself to give defendant 30 days notice if it determined to sell certain property it owned in Brigantine. The letter was subsequently recorded by defendant. Plaintiff has now contracted to sell the premises to a third party and by this action seeks to discharge the letter of record. As part of the initial process, an order to show cause was issued without restraints and, on the return day, this court made preliminary findings that the letter created no equitable rights in the property and ordered its discharge. Shortly before that defendant had filed an answer, counterclaim and a lis pendens. Plaintiff then sought on short notice, to expand its application for interim relief to include the discharge of the lis pendens. Because of the short notice, however, this court declined to rule on the lis pendens and invited further submissions on that issue. Although nothing further was submitted *331 the issue was argued on September 24, 1986, following which the court reserved decision. The following represents the ruling of the court.

Factual Background.
Plaintiff, Hilton Hotels Corporation ("Hilton") is the owner of certain real estate located in Brigantine, New Jersey on which there is located a motel and pub commonly known as the Sandpiper Motel. Defendant, Piper Company ("Piper") was the former owner of the property and sold it to Hilton in February 1980 for $3,250,000. Although the agreement of sale did not give defendant any right of first or final refusal, option or any other right pursuant to which defendant could compel Hilton to reconvey the premises, a day before the closing, defendant requested that Hilton give notice of any intention it had to sell. Hilton was agreeable so long as the obligation created no rights of first or final refusal or in any way obligated Hilton to sell to Piper.
The result was the letter dated February 28, 1980 which was executed on February 29, 1980 in a recordable form and which reads in pertinent part as follows:
This will acknowledge on behalf of the Hilton Hotels Corporation that in the event Hilton Hotels Corporation shall determine to sell the Sandpiper Motel premises prior to making any change in the premises from the conditions existing as of this date, the Hilton Hotels Corporation will notify you in writing of the possible sale 30 days prior to negotiating for the sale of said premises to anyone else.
Anything hereinabove to the contrary not withstanding, this letter shall not be deemed to create any duty on the part of the Hilton Hotels Corporation to sell or transfer the premises to the Piper Company, or it partners. Furthermore, this letter shall not create rights of first or final refusal in the Piper Company concerning the potential sale of the premises by Hilton Hotels Corporation.
The sale was completed the next day and Hilton took occupancy of the premises. Defendant ultimately recorded the letter on December 18, 1981. Hilton has been in possession of the premises for over six years. Although the exact timing is not clear, sometime this year Hilton successfully negotiated for the sale of the premises to a third party. No notice was given *332 to defendant before the negotiations but on July 16, 1986 counsel for Hilton advised Piper in writing that the premises were being sold by Hilton on September 15, 1986. A representative of Piper responded July 22, 1986 indicating that it was "most anxious" to discuss this sale and wished to proceed "in accordance with the terms of our letter agreement." Hilton elected to proceed with the sale to the third party and in the face of defendant's refusal to voluntarily discharge of record the February 1980 letter, it instituted this suit on August 25, 1986. Because of the pendency of this application the closing on the sale has been postponed.

Legal Conclusions.
The initial question to be determined involves an interpretation of a recent amendment of the lis pendens statute. N.J.S.A. 2A:15-7; see Fravega v. Security Savings & Loan Association, 192 N.J. Super. 213 (Ch.Div. 1983). There are two sections to that statute, one being the so-called "a" portion which relates to actions to enforce or declare rights in or concerning real estate wherein plaintiff's claim arises out of a written instrument which is either executed by defendant and identifies the real estate or appears of record. The second section is the so-called "b" portion and it anticipates settings in which there is no writing but where a lis pendens has been filed as part of a claim purporting to affect real estate. In the latter-type case the party adversely affected by the lis pendens may move before the Superior Court for a determination as to whether there is a "probability that final judgment will be entered in favor of plaintiff sufficient to justify the filing or continuation of the notice of lis pendens." N.J.S.A. 2A:15-7(b); R. 4:6-5. Given the fact that the letter in question identifies the premises, is signed by the party seeking to be charged and was recorded, there is little doubt that the applicable portion of the statute is section "a." Although significant changes in the statute were implemented for situations in which there is no writing, in a case such as this there are no significant procedural *333 changes and anyone seeking to discharge is left with the same remedies which existed prior to the amendment. Fravega v. Security Savings & Loan Assoc., supra, 192 N.J. Super. at 217; Polk v. Schwartz, 166 N.J. Super. 292, 298 (App.Div. 1979).
In accordance with the cases decided under the earlier statute, N.J.S.A. 2A:15-6, unless the complaint unequivocally recites a cause of action which would not permit the filing of a notice of lis pendens, it would not be appropriate to discharge the notice unless the pertinent counts of the underlying complaint are subject to dismissal for failing to state a cause of action seeking to enforce or declare an interest in real estate or unless such a claim can be dismissed pursuant to a motion for summary judgment. Polk v. Schwartz, supra; R. 4:46-2. In this case the lis pendens was filed pursuant to a counterclaim. Since that counterclaim seeks rescission of the 1980 sale and specific performance of the February 28, 1980 letter, the pleadings may not be stricken based on a failure to state a claim upon which relief can be granted. At least plaintiff does not make such an argument. Rather, plaintiff asserts that defendant's claims, even if sustained, do not involve an enforceable interest in real estate and accordingly the lis pendens should be discharged. Although not labeled as such, plaintiff's argument seeks a ruling as a matter of law and the court will therefore treat the application as a motion for partial summary judgment. R. 4:46-2.
Leaving aside the question of whether defendant is entitled to rescind the 1980 agreement, the inquiry here should focus on the impact of the February 28, 1980 letter and whether it creates any interest in real estate. Although there is some ambiguity regarding the intent of the parties as reflected in the first paragraph, the second paragraph is quite explicit in excluding any enforceable rights in real estate. For example, the letter specifically excludes any rights of first or final approval in Piper. As the writing also notes, it "shall not be deemed to create any duty on the part of the Hilton Hotel Corporation to *334 sell or transfer the premises to the Piper Company, or its partners." Given these disclaimers what equitable rights, if any, were created by a promise to give notice? To answer the question one has to anticipate what rights Piper would have had assuming notice had been given. Presumably what the first paragraph intended (and this is what defendant says was intended) was that Piper be given the opportunity to be made aware of Hilton's intent to sell, if and when it occurred, so that it (Piper) would have the ability to make an offer to buy before there was any competition, assuming it chose to do so. Even assuming that scenerio were played out, however, Hilton had by the terms of the letter the absolute right to decline a sale to Piper. It is thus difficult to fathom what equitable right to the property Piper would have under such circumstances. It is my judgment that it had none.
Piper nevertheless contends that what was "intended" was that Hilton would have the good faith obligation to sell to Piper assuming Piper elected to make an offer. It thereby argues that it should have the chance to buy now. If the first paragraph were read by itself, such an intent would be a fair inference, which, given the procedural context here, is an inference the court would adopt. To adopt that inference when the letter is read as a whole, however, requires the court to ignore or make meaningless the explicit language of the second paragraph. Clearly the document must be read as a whole. Even when viewed within the context of a motion for summary judgment, the court should not indulge inferences which the writing itself excludes. Also, saying that Hilton had to act in good faith does not mean that it had to forego that for which it bargained. According to the letter Hilton had no obligation to either offer the property to Piper or give it the final say in matching or exceeding any such asking price. At best, what Piper obtained by the bargain was notice and the opportunity to try to convince Hilton to sell the property to it, assuming it chose to make an offer. Indeed Piper may still have that right. It is the conclusion of this court, therefore, that none of the *335 rights in real estate contemplated by the lis pendens statute were created in favor of Piper by the letter of February 28, 1980.
An alternative way of analyzing Piper's claim is to assume that the court reaches the contrary conclusion and then to take that conclusion to its logical conclusion. Such a conclusion would require that the court void the agreement of sale already outstanding with the third party. Leaving aside the fact that such a result would affect the rights of those not parties to this litigation, what then would Piper have a right to do? Could it force Hilton to sell to it? The answer is obviously no. Would it be "bad faith" for Hilton to refuse to recognize a bona fide offer from Piper? Although there are circumstances where bad faith is conceivable, none are presented here. In that regard, it is important to point out that defendant has filed no certification indicating that it is either ready, willing or able to meet the contract price which Hilton has negotiated with its buyer. Although the counterclaim seeks specific performance, a motion for summary judgment, such as this, is designed to cut through the bare allegations of pleadings. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). It has now been well over 11 weeks since Piper got notice of Hilton's intention to sell and at no time has Piper demonstrated any intention to buy or any ability to do so.
Some attention must now be given to defendant's claim for rescission. It is not clear exactly what the basis of that claim is and defendant has not sought to elaborate on it through any certification or argument. Presumably, the thrust of the claim is that if Piper is deprived of an ability to capitalize on whatever benefits might have been achieved through an earlier notice of Hilton's intention to sell, then it has been effectively deprived of part of the consideration that generated the original sale to Hilton back in 1980. If so, it would, presumably, then argue that, having been deprived of the full consideration, it should then be returned to its prior position, i.e., ownership of the property.
*336 Rescission, of course, is an equitable remedy and only available in limited circumstances. See generally 17 Am.Jur.2d, Contracts, § 482. Leaving aside those circumstances where the parties consent, contracts may only be rescinded where there is either original invalidity, fraud, failure of consideration or a material breach or default. Id. at 951. Even where grounds for rescission exist, however, the remedy is discretionary and will not be granted where the offended party has not acted within a reasonable time, Redrow v. Sparks, 76 N.J. Eq. 133, 135 (Ch. 1909), or where there has been substantial performance. Most important for present purposes and subject to certain exceptions not relevant here, in order to grant rescission the court must also be able to return the parties to the "ground upon which they originally stood." Driscoll v. Burlington-Bristol Bridge Co., 28 N.J. Super. 1, 4 (App.Div. 1953); see generally 18 Am.Jur.2d, Contracts, supra at 512; Byard v. Holmes, 33 N.J.L. 119, 127 (Sup.Ct. 1868). Any effort to return these parties to the position they held six years ago is neither realistic nor fair. Not only has Hilton occupied the premises and been deprived of its $3,250,000 during all of this time, but it has now obligated itself to a third party whose rights would have to be ignored if such a remedy were granted. Although admittedly, this court may not yet have all of the facts which could bear on the potential remedies if defendant is ultimately successful on its counterclaim, there is no circumstance which has been suggested which would justify rescission. Therefore, even assuming that there was actionable wrongdoing by Hilton, based either on a breach of the original agreement or a failure to comply with the 1980 letter, this court is nevertheless prepared to rule even now that the remedy in such a setting would not be a rescission.
It is the conclusion of this court, therefore, that although the present application must be evaluated pursuant to N.J.S.A. 2A:15-7(a) and may be granted only if plaintiff is entitled to partial summary judgment, Polk v. Schwartz, supra, 166 N.J. *337 Super. at 299, defendant's claim to an equitable interest in real estate and/or rescission of the 1980 agreement, may be dismissed as a matter of law. Given that ruling, the remaining claims, even if successful, will not create or enforce an interest in real estate and the lis pendens should therefore be discharged.
In reaching this conclusion it should be remembered that neither counsel nor the court has attempted to treat all of the issues which bear on defendant's claims. For example, questions remain regarding whether there was "consideration" to support the letter, whether the letter is capable of being "specifically enforced" and whether there were changes which were made to the premises which would have obviated the need for notice. Because this motion was treated as one for summary judgment, defendants' position on these issues was accepted. On the question of "changes," for example, the facts were never developed sufficiently in the certifications to determine whether the motion could be determined on that basis alone. It was assumed, therefore, that there were no changes. Similarly, there was insufficient factual information to adequately resolve the question of consideration and it was, therefore, assumed that there was consideration to support the letter agreement.
Finally, it should be noted that the conclusions being reached do not mean that this court has determined that there was no actionable wrong by Hilton. Defendants' cause of action regarding Hilton's alleged failure to comply with the letter and/or the terms of the original agreement of sale is still viable and remains open. What has been addressed by this ruling is the nature of that claim and the remedies which would be available assuming the claim is proven.
Plaintiff's motion is, therefore, granted and an order should be submitted in accordance with the above.