BOROUGH OF FRANKLIN LAKES, AN INCORPORATED MUNICI-
PALITY OF THE STATE OF NEW JERSEY, PLAINTIFF–AP-
PELLANT, v. OTTO K. MUTZBERG, DEFENDANT–RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued May 9, 1988—Decided June 24, 1988.

48

Before Judges PETRELLA and DREIER.

*William T. Smith* argued the cause for appellant (*Hook, Torack & Smith,* attorneys; *William T. Smith* on the brief and supplemental letter brief).

*Anthony D. Andora* argued the cause for respondent (*Andora, Palmisano, Harris & Romano,* attorneys; *Anthony D. Andora* of counsel; *Joseph M. Andresini* on the brief; *Anthony D. Andora* on the supplemental letter brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The Borough of Franklin Lakes appeals from a dismissal of its complaint against defendant Otto K. Mutzberg, its former tax assessor.

Mutzberg was tax assessor for Franklin Lakes from 1967 until 1986. During this period he resided on property he owned in Franklin Lakes. In addition to the property he owned in Franklin Lakes, during 1976–1986 Mutzberg also partly owned property at 729 Colonial Road, Franklin Lakes consisting of about six acres. This property was purchased by Mutzberg's parents in 1925. Defendant's affidavit states that since then the property has been used as a farm. He submitted photographs of the farming operations on the property in his brief to the trial court, verified by a supporting affidavit. In 1961 Mutzberg's father died. On May 1, 1962 his mother, Bertha Mutzberg, conveyed this property (Lots 1 and Lots 1Q in Block 1304) to Mutzberg and his brother, Robert, and their wives. They in turn reconveyed an undivided ⅓ interest in the property to Bertha Mutzberg. The following year she conveyed an undivided ⅙ interest in the property to Mutzberg, his brother and their wives. An affidavit submitted to the trial court stated that Bertha Mutzberg entered into these transactions in order to retain an interest in the property so that she could not be removed against her will, notwithstanding that her children and their wives were involved.

Defendant's affidavit and attached exhibit indicated that he and his brother and their wives conveyed a life estate in the subject property to his mother who was then 69 years of age. The document, which was unrecorded but nevertheless apparently effective, was signed in approximately 1965 by defendant, his brother and their wives and stated:

Re: 729 Colonial Rd., Franklin Lakes, N.J.

It is hereby understood and agreed that we, the undersigned, hereby grant to Bertha Mutzberg, a life estate in the above subject premises, which life estate is to remain in force and effect during that period of time that Bertha Mutzberg, aforesaid, is a resident thereof.

Mutzberg's affidavit also stated that Bertha applied for and received a senior citizen's deduction for each year between 1968 and 1985. She entered a nursing home in 1985.

It appears undisputed that in 1984 defendant and his brother entered into an agreement with Paramus Nursery which permitted the use of the subject property as a nursery. The owners thereafter received over $500 per year from the property which was used for the growing and transplanting of trees and shrubs for sale. Prior to that time the property was assertedly a working farm and this was supported by photographs and an affidavit.

Apparently, there was a long-standing dispute between Franklin Lakes and defendant regarding his performance of his duties as tax assessor and his assessment practices.[1] It also appears, without dispute, that in 1978 Franklin Lakes hired a private firm to reevaluate all the properties in the municipality.

In its complaint Franklin Lakes alleges that defendant intentionally or negligently misclassified his own property during 1976–1986 under the Farmland Assessment Act, *N.J.S.A.* 54:4–23.1 *et seq.*, while he was the Borough's tax assessor; fraudulently awarded his property a senior citizen's deduction under

---

[1]Defendant noted that Franklin Lakes filed complaints on at least two occasions against him before the Bergen County Board of Taxation and during the 1970's and 1980's.

*N.J.S.A.* 54:4–8.40 *et seq.;* negligently credited his property with a senior citizen's deduction; misrepresented that he was impartially performing his duties by improperly assessing his property, and that his assessment of his own property constituted a conflict of interest.

For purposes of the motion based on the statute of limitations, defendant demurred to the claim that during 1976 through 1986 he "incorrectly, or even improperly, classified properties in which he had an interest as being eligible for a senior citizen's deduction and a farmland assessment deduction." Although Franklin Lakes argues that the concession was broader, our reading of the preliminary statement in defendant's brief on its summary judgment motion, as well as the thrust of the moving papers, satisfies us that the concession was limited to that aspect of the motion relating to the claimed bar of the statute of limitations either under the tax laws or *N.J.S.A.* 2A:14–1.[2] We note that Point 3 of that brief argued that the fourth count of the complaint failed to state a claim upon which relief could be granted. It also became obvious upon the filing of defendant's reply brief in support of his summary judgment motion that defendant asserted alternative grounds for dismissal because he asserted in his statement of facts that there was no basis for establishing that either the

_____

[2]Defendant appears to have confused the standard of review applied in summary judgment motions under *R.* 4:46–2 with that applied to motions to dismiss under *R.* 4:6–2(e), however, the trial judge apparently treated the motion as one for summary judgment. It was unnecessary for defendant to concede the allegations of the complaint in his brief in support of his motion for summary judgment. Unlike a motion to dismiss a complaint in which all facts alleged in the complaint are deemed admitted, *Polk v. Schwartz,* 166 *N.J.Super.* 292, 299 (App.Div.1979), a motion for summary judgment pierces the allegation of the pleadings to demonstrate that the facts are otherwise than those alleged. *Rankin v. Sowinski,* 119 *N.J.Super.* 393, 400 (App.Div.1972). Moreover, motions for summary judgment do not admit even well-pleaded facts in a complaint. *Id.* at 399. Summary judgment is proper if the supporting papers for the motion show an absence of any material issue of fact even though the pleadings alone raise such issues of fact. *Eisen v. Kostakos,* 116 *N.J.Super.* 358, 370–371 (App.Div.1971).

property had not been used as farmland for the claimed period or that the senior citizen's deduction was improper. The affidavit and briefs on the summary judgment motion thus, at least from defendant's perspective, expanded the issues beyond the statute of limitations issue (which issue might appropriately have been the subject of a motion to dismiss). There was apparently no real argument on the summary judgment motion, and the judge ruled on the briefs and papers submitted.

We recognize that this was not a trial and that if the matter had gone to trial, Franklin Lakes, as plaintiff, would have had the burden of proof as to the allegations of its complaint. However, Franklin Lakes did not submit any further responding papers or challenge any of the documents submitted by the defendant. See *R.* 4:46-1 permitting answers or responses to opposing papers, and *R.* 4:46-5 stating that summary judgment is proper where the adverse party does not submit an affidavit establishing specific facts. Moreover, no proofs were proffered thereafter, either by motion for reconsideration to the trial judge, see *R.* 4:49-2; *R.* 1:7-4, or in connection with the briefs filed in this appeal. After oral argument we requested and received supplemental letter briefs as to the proofs upon which Franklin Lakes had intended to rely. Its response essentially was an attack on the credibility of verified statements by defendant and his brother, and particularly certain deposition testimony of defendant which deferred to his brother's knowledge of their mother's finances.

I

On this appeal Franklin Lakes argues that its claims are not subject to the time limitations in the tax statutes; that they are not barred by the time limitations in *N.J.S.A.* 2A:14-1 *et seq.;* that Mutzberg's alleged intentional incorrect assessment of his own property was a violation of a public trust and a fraud upon the municipality, and that the trial judge's order dismissing the

complaint without making appropriate findings did not comply with *R.* 4:46–2 and *R.* 1:7–4.[3]

 We agree with Franklin Lakes' argument that its action against Mutzberg is not a property tax appeal, and accordingly is not barred by the time limitations of *N.J.S.A.* 54:4–23.13 or *N.J.S.A.* 54:4–23.13b. The trial judge, however, relied on *N.J.S.A.* 54:3–21 as an alternative basis for dismissal of plaintiff's action. To that extent, the judge erred in so ruling. *N.J.S.A.* 54:3–21 provides in pertinent part:

> A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or *a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district,* or by the assessed valuation of property in another taxing district in the county, *may, on or before August 15 appeal to the county board of taxation* by filing with it a petition of appeal; . . . . (Emphasis supplied.)

Since the complaint does not allege any discrimination against the municipality "by the assessed valuation of property in the taxing district," the quoted statutory provision does not apply. Rather, the statutory provision is designed to enable a municipality to appeal an assessment which it believes could be insufficient. *F.M.C. Stores Co. v. Borough of Morris Plains,* 195 *N.J.Super.* 373, 380 n. 3 (App.Div.1984), aff'd 100 *N.J.* 418 (1985). Although Franklin Lakes might have used that provision, and arguably did not use it here to avoid the statute of limitations relating to the tax laws, the suit it instituted against Mutzberg was not directed at his status as taxpayer, but as a former Borough tax assessor.

Respondent's brief does not argue that *N.J.S.A.* 2A:14–1 applies, and the trial court judge did not rely on that statute in his written opinion. In any event, it is clear that the statute of limitations in *N.J.S.A.* 2A:14–1 does not apply to the State or

---

[3]With respect to the argument that the judge failed to make findings and legal conclusions, the judge filed a November 19, 1987 letter opinion setting forth the reasons for his determination. We accept this letter opinion as his findings. See *R.* 1:1–2 and *R.* 2:5–1(b).

any of its subdivisions. See *State v. United States Steel Corp.*, 22 *N.J.* 341, 352 (1956); *Port Authority of N.Y. & N.J. v. Bosco,* 193 *N.J.Super.* 696, 699 (App.Div.1984).

## II

 Franklin Lakes contends that defendant should have known that his actions violated *N.J.S.A.* 2C:30–2 (official misconduct), and refrained from assessing property that he owned or in which he had an interest. The trial judge correctly concluded that no specific allegations of criminal official misconduct were alleged. Hence, Franklin Lakes cannot appropriately raise the criminal statute as an adequate basis for a civil cause of action here. Cf. *Lally v. Copygraphics,* 173 *N.J.Super.* 162, 171–174 (App.Div.1980), aff'd 85 *N.J.* 668. The complaint alleges that Mutzberg's intentional misclassification of his property and his award of a senior citizen's deduction to that property from 1976 until 1986 constituted fraud. There is no allegation of criminal misconduct nor any sufficient showing to support an allegation that Mutzberg committed an unauthorized exercise of his official functions.

In its brief Franklin Lakes does not challenge the judge's determinations that its claims were unsupported by fact.[4] Nonetheless, in light of the judge's decision and the arguments below, a review of plaintiff's claims is appropriate under the criteria for summary judgment. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74–75 (1954).

 In order for the subject property to qualify for a Farmland Assessment, an applicant must establish the following on or before August 1 of the pre-tax year: ownership of at least five acres of land which had been devoted to agricultural or *horticultural* use for retail or wholesale both during the year of application and for two years prior to the tax year for

---

[4]The trial judge noted that Franklin Lakes did not challenge the assessment of the subject property in 1978 after the valuation by a private firm.

which assessment is required. The land must also generate at least $500 in gross sales annually. See *N.J.S.A.* 54:4–23.1 *et seq.; N.J.A.C.* 18:15–1.1 *et seq.*

Defendant's affidavit stated that the property was used as a farm during the disputed period. He also submitted to the trial court photographs appended to his brief, which were authenticated by his supporting affidavit, to establish that the property was used and properly classified as farmland. Defendant averred that the farm, as operated by his mother and more recently Paramus Nursery, has generated at least $500 in income during the past 27 years. See *N.J.S.A.* 54:4–23.5 ($500 threshold is required to establish that land is devoted to agricultural or horticultural use).

The 1982 application for Farmland Assessment serves as a reference. It was signed and verified by defendant's brother Robert. In compliance with the statute, it stated that "gross sales of agricultural or horticultural products produced on said land ... have averaged and will average at least $500.00 per year during the two year period immediately preceding the tax year for which this application is made, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time...." Robert reaffirmed at his deposition that his mother made over $500 per year from produce sales. Defendant Otto Mutzberg approved each application. Hence, Mutzberg's sworn statements of compliance with the statute were undisputed. *Judson v. Peoples Bank & Trust Co. of Westfield, supra,* 17 *N.J.* at 75.

No proofs were submitted by Franklin Lakes in support of its allegation that defendant intentionally misclassified the subject property as farmland. We inquired at oral argument as to at least a *prima facie* showing as to what proofs were available to challenge the Farmland Assessment and received none at that time. This was so notwithstanding interrogatories had been answered and depositions had been taken in this matter. Nor

were such proofs proffered in plaintiff's supplemental letter brief after plaintiff was directed to outline the proofs which could be presented if we remanded for an expansion of the record. Essentially plaintiff relied on its brief and the bare allegations of its complaint. However, they were unsupported by fact and merely stated bare conclusions. This is insufficient under our Rules. See *R.* 4:46–5.

At oral argument on this appeal Franklin Lakes argued that there is a question of whether the operation of the property as a nursery could qualify as farmland under the tax laws by the mere growing of trees and shrubs for resale. Since the statute and regulations thereunder also refer to horticulture, which includes "nursery, floral, ornamental and greenhouse products," *N.J.S.A.* 54:4–23.4, as opposed to "tree and fruit products," see *N.J.S.A.* 54:4–23.3 as amended by *L.* 1986, *c.* 201, § 1, we reject that argument as being without merit.[5] No adequate basis has been shown for considering that the farmland assessment was inappropriate or even for disturbing the judge's determination.

Franklin Lakes had no witnesses to produce and those it had named in answers to interrogatories had not seen the property. The Borough's arguments are insufficient to create a fact issue. More is required than mere denials without supporting affidavits or proofs. As we said in *Heljon Management Corp. v. Di Leo*, 55 *N.J.Super.* 306, 312 (App.Div.1959):

> Next, defendants contend that the summary judgment must be reversed since there were genuine issues of fact. However, it is settled that where there is a

[5]The dictionary definition of "horticulture" would also include such activities. It is defined as "the science and art of growing fruits, vegetables, flowers, or ornamental plants," *Webster's Seventh New Collegiate Dictionary.* Although not directly implicated on this appeal, we are advised by respondent that Franklin Lakes' denial of a 1987 Farmland Assessment for the subject property was reversed on appeal to the Bergen County Board of Taxation. We could take judicial notice of this. See *Evid.R.* 9. This had to be based on a showing of farmland use under the statute for the preceding two tax years. *N.J.S.A.* 54:4–23.2.

*prima facie* right to summary judgment the party opposing the motion is required to demonstrate by competent evidential material that a genuine issue of a material fact exists. This is to afford litigants protection against groundless claims and frivolous defenses. *Robbins v. Jersey City*, 23 *N.J.* 229, 240, 241 (1957). It is not sufficient for the party opposing the motion merely to deny the fact in issue where means are at hand to make possible an affirmative demonstration as to the existence or non-existence of the fact.

*Rule* 4:46–5 places affirmative requirements on the adverse party to a summary judgment motion:

[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. . . . [If] it appears from the affidavits submitted by him that he cannot, for reasons therein stated, present by affidavit facts essential to justify his opposition, . . . the court may deny the motion, may order a continuance to permit additional affidavits to be obtained, depositions to be taken or discovery to be had, or may make such other order as may be appropriate.

The Rule requires the judge to enter summary judgment against the adverse party "[i]f he does not so respond." Franklin Lakes failed to present any facts in opposition to the summary judgment "showing that there is a genuine issue for trial." Consequently the complaint as to the Farmland Assessment aspect was correctly dismissed. *See R.* 2:10–5.

### III

Under *N.J.S.A.* 54:4–8.40 *et seq.*, an applicant for a senior citizen's deduction must establish by December 31 of the pre-tax year that the following facts existed in October 1 of that same year: New Jersey citizenship; age of at least 65 years;[6] ownership of a dwelling which is part of the real property for which a deduction is sought; residence in the dwelling, and annual income within the limits of *N.J.S.A.* 54:4–8.41. See also *N.J.A.C.* 18:14–1.1 *et seq.*

The record before the trial judge, and before us, establishes that Mutzberg's mother qualified as a senior citizen because

---

[6]Age 55 is sufficient if the claimant is the unmarried surviving spouse of a decedent who was granted the same deduction under the same conditions as the surviving spouse. *N.J.S.A.* 54:4–8.41a.

she was over age 65 when she applied for the deduction and otherwise fulfilled the requirements of the statute and the regulations. Under the New Jersey Department of Treasury, Division of Taxation, regulations relating to senior citizen's deductions, a holder of a life estate is entitled to a senior citizen deduction. *N.J.A.C.* 18:14–1.1 defines "owned" as "an ownership of an estate in fee or a life estate individually...." Mutzberg's ownership of the reversionary interest does not conflict with a life estate by his mother, but is only subject to that life estate.

Our review of the complaint in light of the record establishes that Count two merely contends that defendant's grant of a senior citizen's deduction constituted fraud. The elements constituting fraud, however, were not specifically pleaded. See *R.* 4:5–8(a); see also *Kadison v. Horton,* 142 *N.J.Eq.* 223, 225 (E. & A.1948); *The Dreier Co., Inc. v. Unitronix Corp.,* 218 *N.J.Super.* 260, 273–274 (App.Div.1986); *Rego Industries, Inc. v. American Mod. Metals Corp.,* 91 *N.J.Super.* 447, 456 (App. Div.1966). Hence, an incorrect award of a senior citizen's deduction is claimed, if at all, only in the negligence allegation of Count three. However, because of the provisions of *N.J.S.A.* 59:3–2, if the actions were merely negligent, they would not constitute willful actions and defendant would be immune from liability. Obviously a tax assessor is a public official. *Horner v. Ocean Tp. Comm.,* 175 *N.J.Super.* 533, 539 (App.Div.1980). *Ream v. Kuhlman,* 112 *N.J.Super.* 175, 190 (App.Div.1970). Generally, absent ill will or bad faith, public officials are not individually liable for damages resulting from their discretionary judgment. See Tort Claims Act, *N.J.S.A.* 59:3–2; *Visidor Corp. v. Borough of Cliffside Park,* 48 *N.J.* 214, 220–221 (1966), *cert.* den. 386 *U.S.* 972, 87 *S.Ct.* 1166, 18 *L.Ed.*2d 132 (1967); *Panepinto v. Edmart,* 129 *N.J.Super.* 319, 325 (App. Div.1974), certif. den. 66 *N.J.* 333 (1974). Nevertheless, Franklin Lakes proffered no proofs to support any allegation of

fraud. The judge below correctly dismissed that aspect of the complaint.

## IV

The last count of the complaint alleges that defendant misrepresented that he performed his duties in an impartial and unbiased manner because he assessed property in which he had an interest, thus constituting a conflict of interest. Plaintiff cites no authority for this conclusion, and at oral argument was unable to refer to any basis for this allegation. Our research,[7] and that of counsel, has confirmed that no statute or regulation specifically prohibits an assessor from assessing his or her own property, although there may be considerable sense in having someone else assess the assessor's property. In our view, that is a matter for the Legislature. We note that a municipality may require a tax assessor to be a resident of the municipality. *N.J.S.A.* 40A:9-1.3. An assessor is then charged

---

[7] Although not argued as relevant by any party, we note that the State Conflicts of Interest Law, *N.J.S.A.* 52:13D-12 *et seq.* applies to a State officer or employee who holds "an office or employment in a State agency." *N.J.S.A.* 52:13D-13b. State agency is defined in *N.J.S.A.* 52:13D-13a to include the Executive and Legislative Branches of State government. It excludes counties and municipalities, and thus creates a gap for non-State employees. Pending legislation would impose a conflicts law on county and municipal officials. See S-2579 (1988). Assessors are regarded for some purposes "as municipal officials, but for other purposes are state officials." *Horner v. Ocean Tp. Comm.*, 175 *N.J.Super.* 533, 539 (App.Div.1980). To the extent an assessor may be considered a legislative agent or an agent of the Division of Taxation, see *Horner, supra,* 175 *N.J.Super.* at 538, it might be argued that the assessor would be subject to the Conflicts of Interest Law and the agency Code of Ethics. See *N.J.S.A.* 52:13D-23(e)(4). However, even if assessing property in which the assessor had a "direct or indirect personal financial interest" were a violation of a code of ethics, this would implicate the disciplinary provisions of *N.J.S.A.* 52:13D-23(d). It would not give rise to an independent cause of action based thereon, see *Braitman v. Overlook Terrace Corp.*, 68 *N.J.* 368, 385 (1975); *Horbal v. McNeil,* 66 *N.J.* 99, 103 (1974); *Michaels v. Brookchester, Inc.,* 26 *N.J.* 379, 386 (1958); *Evers v. Davis,* 86 *N.J.L.* 196, 201-204 (E. & A.1914), particularly in light of the dual treatment of the office. *Horner v. Ocean Tp. Comm., supra,* 175 *N.J.Super.* at 539.

with the duty of assessing all of the property within the taxing district. See *N.J.S.A.* 54:4–23. This would obviously include property owned by the assessor. It is perhaps open to debate whether an assessor may properly delegate this responsibility to someone else. Moreover, the Code of Ethics of the Association of Municipal Assessors of New Jersey, a voluntary association, does not address the issue. Likewise, the *Handbook for New Jersey Assessors* which is published by the New Jersey Division of Taxation, contains no prohibition against an assessor assessing his own property.[8] Indeed, in depositions taken before the summary judgment motion Franklin Lakes' expert witness, who conducted the most recent assessment for the Borough, conceded that there was no prohibition of an assessor

---

[8]Section 103.112 of the *Handbook for New Jersey Assessors* (rev'd ed. 1980) is captioned: *"Assessor placing a value on property in which he has an interest."* It states:

> The assessor is required to place a value on each parcel of property situated in his taxing district. This often means the assessor must place an assessed value on property in which he has a financial interest. The potential conflict of interest of this situation is essentially implicit in the system for assessing property under current Local Property Tax Law. One method in which such a conflict could be lessened would be for the municipality to employ an outside appraiser to assess any property in which the assessor has an interest. Of course the assessor must agree to such an arrangement since it is he who will finally approve and enter all property values in the tax list and duplicate.

> Under Property Tax Law the county board of taxation is to review the assessments of all properties in the county. In carrying out this duty the county board of taxation could direct particular attention to properties owned by the assessors under their jurisdiction. This might help insure the objectivity of assessments placed by assessors against property in which they have an interest.

> Members of the public themselves often act as watchdogs in cases of assessments placed by the assessor against property which he owns. Property Tax Law requires that the tax list for each municipality in the county once certified by the county board of taxation is to remain in the office of the board as a public record. Assessments of all properties situated in each municipality are thereby available for inspection by the public. If any taxpayer disagrees with the assessed value any assessor has placed upon his own property or any other property, the taxpayer may appeal to the county board of taxation for a revision of the assessment.

assessing his own property. We conclude that this count of the complaint was also properly dismissed.

Affirmed.